Condemnation of 1711-13 Vine Street, Philadelphia, Pennsylvania by Commonwealth of Pennsylvania, Redevelopment Authority of the City of Philadelphia; and Franklin Town Corporation (Radio Broadcasting Co.)

Radio Broadcasting Company, Appellant.

Radio Broadcasting Company, Appellant *v.* Franklin Town Corporation, et al., Appellees.

148

Argued October 7, 1980, before President Judge CRUMLISH and Judges MENCER, ROGERS, MACPHAIL and PALLADINO. Judges WILKINSON, JR., BLATT, CRAIG and WILLIAMS, JR. did not participate.

*C. George Milner,* for appellant, Radio Broadcasting Company.

*William T. Steerman,* Special Counsel, with him *Peter A. Galante,* General Counsel, for appellee, Redevelopment Authority of the City of Philadelphia.

*David S. Machlowitz,* of counsel, *Ballard, Spahr, Andrews & Ingersoll,* for appellee, Franklin Town Corporation.

OPINION BY JUDGE ROGERS, December 5, 1980:

The appellant in this essentially eminent domain case, Radio Broadcasting Corporation (RBC), formerly a tenant occupying portions of a building at 1711-13 Vine Street, Philadelphia, is in pursuit of compensation or money damages from the Commonwealth of Pennsylvania acting by the Department of Transportation (PennDOT),[1] the Redevelopment Authority of Philadelphia, and Franklin Town Corporation, a privately owned business corporation. To this end it instituted in the Court of Common Pleas of Philadelphia County two separate personal actions sounding in trespass, assumpsit and for declaratory judgment against the Redevelopment Authority, Franklin Town and fictionally named individuals. It also filed an original and amended Petition for the Appointment of Viewers, pursuant to Section 502 of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess. P.L. 84, *as amended,* 26 P.S. §1-502, naming the Commonwealth, the Redevelopment Authority and Franklin Town as respondents. RBC's amended Petition for the Appointment of Viewers, and a fourth action, an eminent domain proceeding commenced by PennDOT's filing of a Declaration of Taking of a portion of 1711-13 Vine Street, and one of RBC's personal actions were consolidated below into a single action captioned Condemnation of 1711-13 Vine Street by the Commonwealth of Pennsylvania, Redevelopment Authority of Philadelphia and Franklin Town Corporation, leaving separate the remaining personal action against the Redevelopment Authority, Franklin Town and unidentified individuals. The Redevelopment Authority and Franklin Town filed preliminary objections in the nature of demurrers to the consolidated eminent do-

---

[1] As will be revealed in the body of this opinion, RBC released the Commonwealth (PennDot) during the pendency of these proceedings.

main proceeding and to the personal action in trespass, assumpsit and for declaratory judgment. The court below sustained both demurrers. No objection is made to any of the procedures below or to the conduct of the hearing. RBC has appealed[2] from the orders dismissing its actions contending that the court below committed errors of law in holding (1) that the personal action should fail because RBC had not stated a cause of action other than one depending entirely upon RBC's entitlement to an award under the Eminent Domain Code, and (2) that RBC was not a displaced person entitled to the reimbursement for expenses and losses incurred in moving from 1711-13 Vine Street, provided by Article VI-A of the Eminent Domain Code. We affirm the orders below.

With respect to the personal action in assumpsit, trespass and for a declaratory judgment, as Judge JACOB KALISH who had the matter in charge below pointed out, RBC's cause is based upon a so-called Assistance Agreement between the Redevelopment Authority and Franklin Town Corporation under which Franklin Town, a redeveloper, agreed to pay any compensation the Redevelopment Authority might have to pay to displaced persons in accordance with the standards of the Federal Uniform Relocation Assistance Act, 42 U.S.C. §4601 et seq., (which standards are incorporated in Section 601-A of the Eminent Domain Code).[3] RBC avers that it is a displaced person under those standards and therefore a third party beneficiary of the Assistance Agreement. The court below correctly concluded that since RBC's entitlement to any benefits of the Assistance Agreement depended

---

[2] RBC appealed the order in the personal action to the Superior Court which transferred it to this court for disposition with the appeal of the order in the eminent domain matter.

[3] Section 601-A of the Code was added by Section 8 of the Act of December 29, 1971, P.L. 640, 26 P.S. §1-601A.

on its being a displaced person under Article VI-A of the Eminent Domain Code, its remedy was by proceeding under the Code, as indeed it had done.

After conducting two days of evidentiary hearings with respect to Redevelopment Authority's and Franklin Town's preliminary objections to RBC's petition for the Appointment of Viewers, Judge KALISH made the following findings of fact which constitute an economical and accurate statement of the facts:

1. Radio Broadcasting Company ("RBC") is a Pennsylvania corporation engaged in the radio wave communication business, and at all times material was the holder of a Public Utilities Commission certificate requiring RBC to provide continuous service.

2. Redevelopment Authority of the City of Philadelphia ("Redevelopment Authority") is an urban redevelopment authority vested with the power of eminent domain.

3. Franklin Town Corporation ("Franklin Town") is a Pennsylvania corporation privately held and financed.

4. Department of Transportation-Commonwealth of Pennsylvania ("PennDOT") is a Department of State government vested with the power of eminent domain.

5. Albert and Edith Glassberg (hereinafter "Owners") at all times material owned 1711-13 Vine Street, Philadelphia, Pennsylvania.

6. On June 16, 1960 the Owners leased the second floor of 1711-13 Vine Street to RBC for a term of 3 years, with annual renewals thereafter unless terminated by 90 day notice.

7. Thereafter RBC occupied the second floor of 1711-13 Vine Street, and later on enjoyed roof rights under the lease.

8. In 1968 RBC built a sophisticated electronic computer terminal in the front portion of its leasehold space which was improved upon in subsequent years.

9. In late 1969, PennDOT announced its plans for acquisition of the Vine Street frontage including the first 10 feet of the building located at 1711-13 Vine Street in connection with the proposed Vine Street Expressway.

10. As a result of the foreseeable PennDOT taking, the Owner refused to renegotiate RBC's lease to give a longer term.

11. PennDOT's taking of the building would have cut through a critical portion of RBC's terminal, which would have interrupted service, forbidden under the terms of RBC's P.U.C. license.

12. As a consequence, RBC embarked on a search for suitable leasehold space to move to in the future, and in early 1971 RBC entered into a lease with River Park House, 3600 Conshohocken Ave., Phila., Pa. for a five year period beginning June 1, 1971.

13. On June 3, 1971 Franklin Town announced its redevelopment project which included premises 1711-13 Vine Street within its boundaries.

14. On June 16, 1971, the Redevelopment Authority and Franklin Town executed an "Assistance Agreement," whereby Franklin Town Corporation agreed to pay relocation payments to displaced occupants. Subsequently, the Authority and Franklin Town entered into a Redevelopment contract.

15. RBC decided to install a new terminal at River Park House, then shut off the old ter-

minal at 1711-13 Vine Street when the new one was put into operation, because physically moving the old terminal would interrupt service, and might result in serious damage to the electronic components in the terminal.

16. PennDOT filed a Declaration of Taking which included a strip of the front of the building at 1711-13 Vine Street on October 24, 1972.

17. On January 18, 1973, PennDOT notified petitioner that a "decision has been made by our engineering staff to eliminate the take on the property you occupy at 1711-13 Vine Street. Therefore, it will be unnecessary to relocate your operation."

18. PennDOT did not at any time relinquish its condemnation of premises 1711-13 Vine Street, Phila., PA.

19. On February 9, 1973, Franklin Town entered into an Agreement of Sale with the Owner of 1711-13 Vine Street to purchase 1711-13 Vine Street. Franklin Town required in the agreement that the seller have the burden of evicting RBC. Possession was to be given at time of settlement, July 2, 1973. This purchase was in lieu of condemnation of these premises by the Redevelopment Authority.

20. On February 19, 1973, the owners of 1711-13 Vine Street by their attorney notified RBC that its lease would terminate on June 30, 1973, the end of the then current term.

21. On April 26, 1973, a Declaration of Taking was filed by the Redevelopment Authority for the Franklin Town Urban Renewal Area, which area had at its southern boundary in the 1700 block, Vine Street, but which did not include 1711-13 Vine Street. The property was to

154

be acquired for a plan or project involving a blighted area.

22. On May 29, 1973, Franklin Town Corporation settled 1711-13 Vine Street with the owners, escrowing $70,000.00 of the proceeds to secure the vacancy at the end of RBC's lease in June 30, 1973.

23. On November 8, 1973, Franklin Town advised counsel for RBC that RBC must vacate the premises by November 30, 1973 or counsel for the owners, Albert L. Glassberg and Eva Glassberg, would compel eviction.

24. RBC, having completed its replacement terminal, abandoned its old terminal and other equipment at 1711-13 Vine Street on January 31, 1974, and moved to River Park House.

25. 1711-13 Vine Street was vacant from January 31, 1974 until it was demolished by Franklin Town in the Spring of 1976.

Findings 10, 11, and 12, it will be noted, record that RBC's landlord refused to renegotiate the lease of 1711-13 Vine Street because of PennDOT's proposed acquisition; and that as a consequence of this refusal and of PennDOT's proposal to take the property, RBC in 1971 sought and found new quarters for its operations. Other evidence in the record not recorded as a finding showed that the relocation of RBC's terminal and other equipment was known in advance to, and actually did, require a matter of years to accomplish because RBC had to provide continuous service. In any event, this work begun in 1971 continued until RBC relocated in January 1974, some six months after the expiration of the last annual term of the lease of 1711-13 Vine Street. Another fact not recorded in the findings worth mentioning, although not necessary to a solution of this case, is that RBC at or just before the hearings below began, formally settled with and re-

leased PennDOT. The terms of settlement do not appear in this record.

The court below concluded that RBC was not a displaced person as defined in the Eminent Domain Code and was not therefore entitled to reimbursement for the removal expenses or other dislocation damages provided by Article VI-A, particularly Section 601A, 26 P.S. §1-601A.

The Uniform Relocation Assistance and Real Property Acquisition Policies, Act of 1970, 42 U.S.C. §4601, was enacted by Congress on January 2, 1971. Its purpose was to establish a uniform policy for the fair and equitable treatment of persons displaced as the result of Federal and federally assisted programs. Article VI-A was added to the Eminent Domain Code by the Act of December 29, 1971, P.L. 640, in order that Pennsylvania acquiring agencies might obtain maximum Federal reimbursement. Not only does Article VI-A contain explicit expression of this intention (see Section 601 A, 26 P.S. §1-601A), much of Article VI-A is a paraphrase of the Federal statute.

> The Federal statute defines a displaced person as: any person who, on or after the effective date of this Act moves from real property or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance. . . .

42 U.S.C. §4601(6).

The Eminent Domain Code's definition of a displaced person, at Section 201(8), 26 P.S. §1-201(8), is:

> any condemnee or other person not illegally in occupancy of real property who moves or moves his personal property as a result of the acqui-

sition for a program or project of such real property, in whole or in part, or as the result of written notice from the acquiring agency of intent to acquire or order to vacate such real property. . . .

The Federal definition has been definitively interpreted as not applying to acquisitions causing displacements effected by private developers. In *Young v. Harris,* 599 F.2d 870 (8 Cir. 1979), low income residents of a city redevelopment area sought to restrain redevelopment because the developer, a private party (although having power of eminent domain), had failed to observe the requirements of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970. The District Court's denial of a preliminary injunction was affirmed on the ground, *inter alia,* that the developer acquiring the property was a private party and not a Federal, State or local governmental agency. The court wrote:

It is the established law in this circuit that the URA definition of 'program or project undertaken by a Federal agency, or with Federal financial assistance' does not encompass the situation when a private party undertakes a federally assisted program or project and acquires property. Moorer v. Department of Housing and Urban Development, 561 F.2d 175 (8th Cir. 1977), cert. denied, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed. 2d 760 (1978); see also Alexander v. United States Department of Housing and Urban Development, U.S. , n. 9, 99 S.Ct. 1572 n. 9, 60 L.Ed. 2d 28 n. 9 (1979); Conway v. Harris, 586 F.2d 1137 (7th Cir. 1978); Parlane Sportswear Co. v. Weinberger, 513 F.2d 835 (1st Cir.), cert. denied, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed. 2d 252 (1975). Thus the URA would not apply to the Pershing-Waterman redevelopment

project if it were found that the project had been undertaken by a private party as opposed to a federal, state, or local governmental agency. . . . Resolution of . . . [this issue] . . . depends upon whether the appellants' characterization of the project as a joint undertaking in the nature of a partnership between the private developer and the City of St. Louis accurately portrays the organization of the project. We find that the evidence is clearly inadequate to establish that the activities of the City of St. Louis and the private developer are sufficiently intertwined to characterize them as one project undertaken by a state instrumentality.

*Id.* at 877.

Obviously the definition of displaced person in the Eminent Domain Code tracks that of the Federal statute in providing that a displaced person is one who moves "as a result of the acquisition for a program or project." Section 201(11), 26 P.S. §1-201(11) defines a program or project as one undertaken "by or for an acquiring agency as to which it has authority to exercise the power of eminent domain", and Section 201(5) defines an acquiring agency as "any entity vested with the power of eminent domain". 1711-13 Vine Street was not acquired by Franklin Town for a program or project and Franklin Town was not an acquiring agency, within the definitions provided. Judge KALISH clearly, fully and correctly analyzed these points.

Additional authority against RBC's claim under Article VI-A is the case of *Hindsley v. Township of Lower Merion,* 25 Pa. Commonwealth Ct. 455, 360 A.2d 297 (1976), where this court held that a tenant of a property purchased by a municipality which, after the purchase, leased the premises to the tenant for another six month's term, was not a displaced person when

required to move at the end of the new term, because the move was not the result of the acquisition of the property for a program or project but because the tenant's legal occupancy had ended. Here, not only is Franklin Town not an acquiring agency, it agreed to an extension of the term of RBC's existing lease from June 30, 1973 until December 31, 1973, and RBC remained in possession until January 1974.

RBC says next that there was a *de facto* taking of its lease-hold interest in portions of 1711-13 Vine Street, by Franklin Town and the Authority working together. The facts which are said to support this contention are that the 1711-13 Vine Street building was included in the publicized plan for the Franklin Town project; that representatives of the Authority visited RBC's premises inquiring about the value of its property there located; that the Authority agreed that it would condemn property in the area; and that RBC's landlord terminated RBC's lease at the instance of Franklin Town after the latter purchased 1711-13 Vine Street.

The circumstances depended on are clearly insufficient to establish a deprivation of RBC's use and enjoyment of the rented property. *Helms v. Chester Redevelopment Authority,* 32 Pa. Commonwealth Ct. 377, 379 A.2d A.2d 660 (1977). Furthermore, in claiming to be the victim of a *de facto* taking, RBC is required to show that it is a condemnee not merely a displaced person entitled to relocation benefits. *Fisher v. Pittsburgh Public Parking Authority,* 433 Pa. 113, 248 A.2d 849 (1969), is authority for the proposition that the lessee of property purchased by a municipal authority is not entitled, after the termination of his lease, to the status of a condemnee under the Eminent Domain Code.

RBC's further arguments: that the record shows that the activities of the Redevelopment Authority and

Franklin Town were so intertwined that, although Franklin Town's purchase was that of a private entity, it should be considered the act of the Redevelopment Authority; that it has been denied various constitutional guarantees; and that it should have damages for delay in payment of compensation—have been considered and are without merit.

Finally, RBC filed in this court what it terms a motion to quash portions of Franklin Town's brief. We may suppress a brief or portions of a brief for failure to conform to the rules of court—Pa. R.A.P. No. 2101—but we know of no authority for suppressing an appellee's brief for taking issue with a finding or conclusion of the lower court. A party who has prevailed below cannot appeal; but he is not required to agree with everything that happened or was decided below. It was entirely appropriate for Franklin Town to argue on this record that RBC moved only because of PennDOT's condemnation and because it needed more space for its operation, of which latter there was some evidence in the record. Further, Judge KALISH did not find, as RBC argues, that RBC was a displaced person; he concluded that it was not.

The court below correctly decided that RBC was not a displaced person entitled to reimbursement for expenses and payment for losses under Article VI-A; that RBC was not a *de facto* condemnee; and that therefore RBC's amended Petition for the Appointment of Viewers and its personal action did not state causes against Franklin Town or the Redevelopment Authority or the latter's unnamed agents.

Orders affirmed.

ORDER

AND Now, this 5th day of December, 1980, the Orders docketed below at No. 3985 February Term 1978 and No. 872 February Term 1979 are affirmed.