517 A.2d 210

Redevelopment Authority of Union County, Appellant *v.* Property Located in West Milton on Route 254 at the Old Reading Railroad Station and Penn Central Advertising, Inc., Condemnee, Appellee.

Submitted on briefs September 11, 1986, to Judges DOYLE and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Raymond J. Lobos, Groover and Lobos,* for appellant.

*John E. Person, III, McCormick, Reeder, Nichols, Sarno, Bahl & Knecht,* for appellee.

OPINION BY SENIOR JUDGE KALISH, November 5, 1986:
Appellant, Redevelopment Authority of Union County (Redevelopment Authority), appeals an order of the Court of Common Pleas of Union County which sustained in part, and overruled in part, its preliminary objections to a petition for the Appointment of a Board of Viewers filed by appellee, Penn Central Advertising, Inc. (Penn Central). We affirm the trial court.

The court found that J.E. and B.C. Vincent owned a parcel of ground that was in the area of a flood control project of the Redevelopment Authority. On this property were two billboard advertising signs maintained by Penn Central pursuant to a lease. The lease was for a three-year term at an annual rental of $150, commenc-

ing March 1, 1979, with the option of Penn Central to extend the lease term from year to year under the same conditions.

When the three-year term expired, Penn Central did not formally exercise its option to renew for an additional year, but each successive year it sent a check for $150 at the beginning of the one-year renewal. These checks were accepted and cashed by the Vincents until March 1, 1981, when the Vincents returned the $150 check with a note of explanation that the Redevelopment Authority is in the process of acquiring this property and advising that the rental can be prorated from March 1, 1981.

Penn Central replied that upon notification of the Redevelopment Authority acquiring the property, it would send a prorated check. In June, 1981, the Vincents notified Penn Central of the actual taking settlement and that Penn Central must remove the signs by June 1, 1981. Penn Central sent a pro rata check from March 1981 to June 1981, to the Vincents.

On June 1, 1981, the Redevelopment Authority asked Penn Central to remove the signs, at which time "you will be entitled to relocation payments." The billboard signs were removed on August 14, 1981.

Penn Central filed a petition with the common pleas court, alleging a *de facto* taking seeking damages and/or moving expenses as a displaced person. The Redevelopment Authority filed preliminary objections and depositions were taken.

Penn Central contends (1) that it was a condemnee at the time of the taking; (2) that it was entitled to damages as a condemnee; and (3) that it was a displaced person entitled to moving expenses.

The trial court held that no *de facto* taking occurred, but ordered a Board of Viewers to fix damages as a dis-

placed person under section 601A of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-601A.

On appeal from a trial court decision in an eminent domain case, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Pidstawski v. South Whitehall Township*, 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977).

A *de facto* taking of private property which triggers just compensation may occur where a governmental agency, by some regulation in the exercise of its police power, infringes substantially upon a legal interest in physical property.

We recognize these takings under section 502(e) of the Code, 26 P.S. §1-502(e), which provides the exclusive procedure and law governing condemnations for a public purpose. To be entitled to compensation for a taking, one must be the owner of a property interest taken. Section 201 of the Code, 26 P.S. §1-201. This section has been held to include tenants. *Graham Realty Company Appeal*, 67 Pa. Commonwealth Ct. 318, 447 A.2d 342 (1982).

Thus, the issue is what property interest, if any, did Penn Central have at the time of the taking. The right to renew the lease on a year-to-year basis would give Penn Central a property interest. However, the trial court held, and we agree, that Penn Central waived this right of renewal and agreed to an early termination of the lease when it forwarded to the Vincents its check for $43.75, prorating the rent up to June 1, 1981. There never had been any formal renewal on a year-to-year basis. Penn Central became a tenant at will. A tenant whose lease has expired is not a condemnee under the Code. *Fisher v. Pittsburgh Public Parking Authority*, 433 Pa. 113, 248 A.2d 849 (1969); *Cherry Press, Inc. v.*

*Redevelopment Authority of Philadelphia,* 11 Pa. Commonwealth Ct. 47, 312 A.2d 477 (1973). He no longer has any property interest in the premises.

At the time of actual purchase by deed, in June, 1985, Penn Central had no compensable property interest. Prior thereto, even if Penn Central did have a right of annual renewal, mere negotiations and even appraisals and a flood control plan were insufficient to establish a *de facto* taking. *Perfection Plastics, Inc. Appeal,* 28 Pa. Commonwealth Ct. 396, 368 A.2d 917 (1977). In *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974), however, where the above conduct was accompanied by a potential loss of the property to the mortgagee, it was held to be a *de facto* taking.

While the conduct of the Redevelopment Authority may have been insufficient to establish a de facto taking, it is relevant and probative in determining whether Penn Central is a displaced person. Section 601A of the Code, 26 P.S. §1-601A, provides that a displaced person shall be reimbursed for moving expenses. The definition of a displaced person governs eligibility. Section 201(8) of the Code, 26 P.S. §1-201(8), provides, "Displaced person means any condemnee *or other person not illegally in occupancy* of real property who moves or moves his personal property *as a result of the acquisition for a program or project* of such real property. . . ." (Emphasis added.) While not a condemnee, Penn Central was legally in possession as a tenant at will.

In *Hindsley v. Township of Lower Merion,* 25 Pa. Commonwealth Ct. 455, 360 A.2d 297 (1976), this Court held that to be a displaced person, the notice of eviction had to come after the property was acquired pursuant to an eminent domain proceeding. There the notice of eviction followed an acquisition by deed, and the tenant's lease had already expired; thus, the court

held that the moving was not the result of an acquisition, since the Township had acquired the property by purchase and merely exercised its right not to renew the lease.

A review of the facts which were the basis for the court's decision in *Hindsley* shows that after the municipality purchased the property by deed, it leased the premises to the tenant for another six months. Said tenant was required to move not because of any program, but because the terms of the lease had expired. In *Fisher* and *Cherry Press,* the issue was whether the tenant was a "condemnee", that is, one having a property interest. In *Radio Broadcasting Co. Appeal,* 55 Pa. Commonwealth Ct. 147, 423 A.2d 444 (1980), a case involving a displaced person, the court really decided the case on the basis that the claimant was displaced by Franklin Town Corp., a private and not a governmental agency.

Section 201(5) of the Code, 26 P.S. §1-201(5), defines an acquiring agency as an entity vested with the power of eminent domain. A 1971 comment to section 201(5) of the Code, clarifies the issue, by stating that the special damages provided in section 601A of the Code, 26 P.S. §1-601A, dealing with relocation and moving expenses, are payable whether the property is condemned *or acquired amicably* in lieu of condemnation.

Congress recognized that a displaced person may be eligible for moving expenses where the acquisition is by a deed in lieu of condemnation and the circumstances show that it was acquired for a public purpose.[1]

---

[1] References to Federal Regulations are indicative of the sources of particular portions of the Pennsylvania Regulations. Such references may aid in explaining the intention and purpose of the Code. Attorney General's Regulations on Uniform Relocation Assistance. 2 Pa. B. 1333 (1972).

> It makes no difference to a person required to move because of the development of a postal facility which method the postal authorities use to obtain the facility. . . . Since the end product is the same,—a facility which serves the public—any person so required to move is a displaced person entitled to the benefits of this legislation.

*Report of the Public Works Committee of the House of Representatives, House Report # 91—1656(1970),* U.S. Code Cong. and Adm. News 5850-5854.

A displaced person need not be a condemnee. Being legally in possession at the time of acquisition and having moved or moved his property, the issue is whether there had been an acquisition within the meaning and intent of the Act.

The acquisition by deed in lieu of condemnation, and the displacement, were, in effect, one act. The form of the transaction should be pierced to see what is the substance, and to see whether it is at odds with the intent and purpose of the Code.

The record is clear that the property was purchased for flood control purposes as indeed had been other property in the area. Everyone was aware of that program.

Accordingly, we affirm.

### ORDER

NOW, November 5, 1986, the order of the Court of Common Pleas of Union County, No. 692, 1982, dated November 20, 1985, is affirmed.