MARX STATIONERY & PRINTING COMPANY, Penn Dry Goods Company, India Overseas Traders, Inc., Susan Garment Co., Lema Novelty Co., Inc., P & S Fabrics, Supreme Suitcase & Bag Co., Irving Wenger Co., Berben Uniforms, Inc., Berben Insignia, and S & S Hat Co.

v.

REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA, Appellant,

MARX STATIONERY & PRINTING COMPANY, Penn Dry Goods: Company, India Overseas Traders, Inc., Susan Garment Co., Lema Novelty Co., Inc. P & S Fabrics, Supreme Suitcase & Bag Co., Irving Wenger Co., Berben Uniforms, Inc., Berben Insignia, and S & S Hat Co., Appellants,

v.

REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1996.

Decided April 30, 1996.

Francis J. Moran, for Appellant, Redevelopment Authority of City of Philadelphia.

Jay S. Ruder, for Appellees, Marx Stationery & Printing Company, et al.

Before DOYLE, PELLEGRINI and KELLEY, JJ.

KELLEY, Judge.

Marx Stationery & Printing Company, Penn Dry Goods Company, India Overseas Traders, Inc., Susan Garment Co., Lema Novelty Co., Inc., P & S Fabrics, Supreme Suitcase & Bag Co., Irving Wenger Co., Berben Uniforms, Inc., Berben Insignia, and S & S Hat Co. (hereinafter collectively, tenants), appeal and the Redevelopment Authority of the City of Philadelphia (RDA), cross-appeals from the February 3, 1995 order of the Court of Common Pleas of Philadelphia County, which denied both parties' motions for post-trial relief.

## I. Factual and Procedural History

These consolidated appeals arise out of an eminent domain proceeding that began more than 17 years ago. The history of this case, as previously stipulated by the parties, involves a commercial building known as the Harrison Building located at 1001–23 Filbert Street in Philadelphia. On February 16, 1979, the owners of the Harrison Building initiated an eminent domain proceeding by filing a petition for appointment of viewers, alleging that the activities of the RDA surrounding the Gallery East Project and the City of Philadelphia (City) in the Center City Rail Tunnel Project, resulted in a *de facto* taking of their property.[1] The tenants did not join in the owners' petition.

After an evidentiary hearing was held before the Honorable Lois G. Forer, an initial order and opinion was entered on August 10, 1981, later modified by an order and opinion dated August 21, 1981 (hereinafter August 1981 orders), in which it was determined that a *de facto* taking had occurred by the RDA's activities but not by the activities of the City. Both the RDA and the owners appealed to this court.

In the meantime, the tenants contacted the RDA to discuss their own claims for damages as a result of the same activities by both the RDA and the City. On November 8, 1982,

the tenants filed a petition for appointment of viewers.[2] Both the RDA and the City filed preliminary objections to the tenants' petition. Thereafter, counsel for the tenants, the RDA and the City agreed to hold in abeyance the tenants' November 8, 1982 petition, pending the outcome of the appeals from the August 1981 orders by the owners and the RDA.

During this time, the RDA, the City, the owners and a proposed purchaser of the Harrison Building entered into a settlement agreement which was submitted to Judge Forer by way of a proposed stipulation and order. The tenants were not informed of the impending settlement of the litigation by these parties and Judge Forer was unaware that the tenants had filed their petition for appointment of viewers on November 8, 1982. Accordingly, on August 1, 1983 (hereinafter the 1983 order), Judge Forer approved the stipulation and entered an order dismissing the owners' action for appointment of viewers and vacating her prior orders and findings in that action.

The tenants then filed an amended petition for appointment of viewers on July 6, 1984. At a subsequent conference before Judge Forer, she informed the parties that she intended to treat her findings of fact and conclusions of law in the owners' case as the law of the case. The RDA and the City filed preliminary objections to the tenants' amended petition. In a memorandum opinion dated May 19, 1986, filed May 21, 1986, Judge Forer noted that "the RDA and owners conspired to keep the Court and the tenants in the dark" and concluded that the RDA was collaterally estopped from arguing that the 1983 order vacating the August 1981 orders prevented those orders from becoming a final judgment. Accordingly, Judge Forer determined that the August 1981 orders were final; therefore, the tenants' amended petition for appointment of viewers was granted

---

1. The RDA acted as an agent for the City of Philadelphia in purchasing and condemning properties needed for the completion of the Center City/Market Street East rail tunnel connection.

2. As tenants of the Harrison Building, tenants herein alleged that as a result of the tunnel project, their building was so isolated they were deprived of the use and enjoyment of their commercial leasehold interests in the Harrison Building.

and the RDA's preliminary objections were overruled.

On RDA's appeal to this court of Judge Forer's 1986 order, this court determined that once the parties had filed their appeals from Judge Forer's August 1981 orders, the trial court was without jurisdiction to proceed in the matter.[3] Consequently, Judge Forer's August 1, 1983 order vacating these prior orders was invalid. This court held that there had been a taking and therefore affirmed that part of Judge Forer's May 1986 order appointing a Board of Viewers to hear and determine damages. The RDA's subsequent application for reargument before this court was denied. Both the tenants' and the RDA's petitions for allocatur filed with the Supreme Court were also denied.

Finally, on April 3, 1990, a Board of Viewers (Board) convened to hear the tenants' damages claims. At the hearing, tenants' counsel and then-RDA's counsel Dona Kahn, entered into a number of stipulations. These stipulations are characterized by the tenants as judicial admissions as to the amounts of damages each tenant is entitled to, while the RDA characterizes them as stipulations made solely for the purpose of eliminating the need for all eleven tenants to testify before the Board as to what each claimed for damages.

Following the hearing, the Board entered an award in favor of the tenants in the aggregate amount of $992,838.11 plus delay damages. All but Berben Insignia, Inc., received general damages under the Assembled Economic Unit Doctrine (AEUD), and all received special damages under section 601A of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended, added by* the Act of December 29, 1971, P.L. 640, *as amended,* 26 P.S. § 1–601A.[4] Both the tenants and the RDA appealed to the trial court from the Board's report.

After numerous pre-trial motions, including motions for summary judgment and partial summary judgment and a quashed appeal to this court, the trial was set for January 6, 1992.[5]

Following three weeks of testimony, the jury returned verdicts in favor of the tenants in the aggregate amount of $431,509.14. However, only S & S Hat Company was awarded general damages under the AEUD. The tenants then filed a motion for recovery of fees and costs under section 609 of the Code, 26 P.S. § 1–609, as well as post-trial motions specifically objecting to issues at trial. The RDA filed post-trial motions as well.[6]

■ On February 3, 1995, the trial court denied both parties' post-trial motions, denied section 609 costs and fees to all but S & S Hat Company, and molded the verdict accordingly. The parties then filed appeals with this court, which have been consolidated for our review.[7]

3. *See Marx Stationery & Printing Co. v. City of Philadelphia,* 114 Pa.Cmwlth. 265, 538 A.2d 648 (1988); *petition for allowance of appeal denied,* 520 Pa. 610, 553 A.2d 971; *petition for allowance of appeal denied, Petition of Redevelopment Authority of the City of Philadelphia,* 520 Pa. 610, 553 A.2d 972 (1988) (hereinafter referred to as *Marx Stationery I* ). We note that the RDA and the owners' appeal to this court of Judge Forer's August 1981 orders was withdrawn before it was heard by this court.

4. Section 601A in general provides moving and related expenses to displaced persons under the Code.

5. The matter was assigned to the Honorable Charles A. Wright, now deceased, on December 3, 1990. Following several hearings on the parties' motions, Judge Wright issued an order on December 9, 1991, which denied all of the objections raised by the RDA under sections 516(a)(4)

and 517 of the Code, 26 P.S. §§ 1–516(a)(4) and 1–517. The RDA then filed an appeal from this order and a motion for a supersedeas or stay with this court. The tenants thereafter filed a motion to quash and a responsive motion to the RDA's request for a supersedeas or stay. On January 3, 1992, Judge Doyle granted the motion to quash and dismissed as moot the motion for a supersedeas or stay.

6. Judge Wright retired following the trial and was therefore unavailable to hear post-trial motions. Following another lengthy delay, the Honorable Bernard J. Goodheart was appointed to hear and dispose of all post-trial matters on December 22, 1992.

7. Our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Appeal of Pennsylvania Department of Transportation,* 54 Pa.Cmwlth. 478, 422 A.2d 711 (1980).

## II. Tenants' Appeal

### A. Issues

The tenants raise a number of issues for our review:

1. Whether the trial court erred in ruling that the stipulations made by the parties before the Board were not binding at trial.

2. Whether the trial court erred in failing to limit the scope of the trial to the applicability of the Assembled Economic Unit Doctrine (AEUD) to tenants' claims.

3. Whether the trial court erred in failing to instruct the jury that their expert's definition of "fair market value" was correct as a matter of law.

4. Whether the trial court erred in failing to exclude or strike the RDA's experts' testimony on the grounds that they were not qualified and that their testimony was not legally competent under the Code.

5. Whether the trial court erred in failing to award each of the tenants costs and fees under section 609 of the Code, 26 P.S. § 1–609.

6. Whether the trial court erred in failing to calculate delay damages at prevailing commercial loan rates.

7. Whether the trial court erred in failing to award the tenants prejudgment interest on their special damages.

### B. Discussion

The critical issue which must be disposed of before any of the remaining issues can be addressed is whether or not the stipulations entered into between the parties before the Board are binding on the trial court. These stipulations are as follows:

(a) Appellants were all tenants occupying their respective spaces at the Harrison Building under existing leases at the time the *de facto* taking occurred (Reproduced Record (R.). 136a);

(b) Lema Novelty remained at the Harrison Building until September 15, 1982; India Overseas, Irving Wenger, P & S Fabrics, Penn Dry Goods and Supreme Suitcase, until September 30, 1982; Susan Garment Co., until October 15, 1982 (with the landlord's consent); and Berben Insignia, Berben Uniforms, Marx Stationery, and S & S Hat Co., until October 31, 1982 (with the landlord's consent) (R.136a–7a);

(c) the *values* of all machinery, equipment and fixtures and the *amount* of appraisal fees testified to by Appellants' appraiser, George Sinclair (R.113a, 134a); and

(d) the *amounts* of all special damages claimed by Appellants (R.132a–35a) except for the business dislocation claims of Berben Insignia, Irving Wenger, P & S Fabrics and S & S Hat Co. The RDA agreed that Berben Insignia was entitled to those damages, but challenged the amount claimed. As regards P & S Fabrics, the RDA agreed to stipulate to its entitlement to business dislocation damages if warranted by its tax returns (which were not available at the time of the hearing) (R.134a).

The tenants argue that these stipulations are authorized under section 501 of the Code, 26 P.S. § 1–501, and are binding on the RDA in the subsequent trial de novo, citing *Commonwealth v. Yudacufski*, 83 Pa.Cmwlth. 609, 479 A.2d 635 (1984); *petition for allowance of appeal denied*, 517 Pa. 333, 536 A.2d 1322 (1985).

*Yudacufski* involved the condemnation by the Department of Transportation (DOT) of two parcels of land owned by Herman Yudacufski. After Yudacufski petitioned for appointment of viewers, the parties apparently entered into stipulations before the Board which were made part of the Board's report concerning the area of property owned by Yudacufski, the extent of the taking and the date of the taking. On appeal to this court, DOT argued that because Yudacufski failed to appeal the Board's findings with respect to the area of property, the extent and date of the taking, that these findings were binding at the trial de novo. This court concluded that it was permissible for the parties to enter into such stipulations which can bind the parties in the future, and that without any record evidence that the stipulations were withdrawn with the consent of the parties, the stipulations were found to have the effect of findings by the Board. *Yudacufski*,

479 A.2d at 639. Hence, Yudacufski's failure to object specifically to these findings by the Board meant that they were binding upon him in the subsequent trial de novo. *Id.*

Herein, the RDA argues that the stipulations were not binding in the subsequent trial de novo. The RDA contends that the stipulations were "severely limited in nature" and "done as a result of a conference between counsel so as to avoid undue amounts of testimony before the Board and avoid burdening the Board with testimony from a number of witnesses, many of whom were previously deposed." (RDA's brief, p. 13.) The RDA also argues that if the parties had stipulated to a final settlement of damages, then the Board's report would have referenced that agreement, pursuant to section 501 of the Code. *Yudacufski* is distinguishable, the RDA asserts, because there the stipulation was made part of the Board's report and the condemnee therein did not object to the stipulation on appeal.

Section 501 of the Code provides as follows:

> At any stage of the proceedings, the condemnor and the condemnee may agree upon all or any part or item of the damages, and proceed to have those parts or items thereof not agreed upon assessed as herein provided. The condemnor may make payment of any part or item thereof so agreed upon.

■ Clearly then the Code does allow for settlement agreements of all or part of the items of damages claimed, as the tenants assert. However, a careful review of the notes of testimony from the Board's April 3, 1990 hearing reveals that it is less than clear that the parties intended to settle the matter by the stipulations. In fact, there are several instances in the record in which RDA's counsel, Dona Kahn, specifically reserves the right to continue to contest the tenants' entitlement to any amount of damages. This exchange is illustrative:

> Ms. Kahn: We will stipulate that for purposes of business relocation, we will not contest Supreme Suitcase and Penn Dry Goods testimony, if they had testimony that they were unable to relocate. So for those two tenants, we will agree to the ten thousand dollar business relocation damages under 601A.

> *   *   *   *   *   *

> Mr. Burd: Can't you get this all together between yourselves and then give it to us in a form where it's already agreed to by both of you?

> Mr. Nix: They're doing that verbally.

> *   *   *   *   *   *

> Ms. Kahn: I am not willing to stipulate to the others.

> Mr. Bass [tenants' attorney]: Would that mean the Redevelopment Authority will now process checks for those items?

> *   *   *   *   *   *

> Ms. Kahn: I'm not agreeing we're going to pay this. What I'm saying, if you [the Board] find they are entitled to damages, I am stipulating to that amount. I am not going to contest their showing a loss of annual wages.

> Mr. Bass: I don't understand that at all. She said, if you find. If she's stipulating—

> Mr. Burd: If we find that they are condemnees, if we find that they are entitled to damages, this is the amount that she would not contest.

> Mr. Bass: She won't contest the amount?

> Ms. Kahn: That's right, exactly.

> *   *   *   *   *   *

> Ms. Kahn: But what I am stipulating to today is that those five people, if you find they're entitled to damages under 601A, should get the $10,000.00 without the necessity of getting on the stand and showing that there's been a loss of patronage. That's all I'm saying. To save the testimony of those five people I'm stipulating that when you find damages, if you're entitled—if they're entitled to damages as displaced persons under 601A, I will not contest the $10,000.00 for those five people. I require and ask this Board to require proof with respect, to the other four people that there was a loss of profits.

(Notes of Testimony, (N.T.), Board's hearing, pp. 102–09.)

We conclude, therefore, that the stipulations were never intended to be a binding settlement of any or part of the items of damages claimed by the tenants. Accordingly, the stipulations were not binding at the subsequent trial de novo.[8]

■ We will next address the remaining issues raised by the tenants in their appeal. First, the tenants argue that the trial court erred in failing to limit the scope of the trial to whether or not the AEUD was applicable to their claims.[9] RDA argues that this issue was never raised at the trial and is therefore waived. *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974). The tenants assert that they raised this issue in their amended petition for appointment of viewers and also at trial in their requested jury instructions numbers 38 and 40.

■ In their amended petition, the tenants merely seek general damages under the Code. Similarly, the jury instructions request that the jury apply the AEUD to all of the tenants' claims and that the jury consider that some of the personal property left behind might be considered fixtures for which they could also receive damages. Our review of the record fails to reveal where the tenants specifically requested that the trial court *limit* the scope of the trial to the applicability of the AEUD to the tenants' claims. Accordingly, this issue is waived. *Dilliplaine.*

Second, tenants assert that the trial court erred in failing to instruct the jury that their appraisal expert's definition of fair market value was correct. RDA argues that this issue was never raised "as framed" by the tenants in the trial court; therefore, it is also waived. Alternatively, RDA argues that the weight to be given an expert's testimony is within the jury's prerogative. *Lira v. Albert Einstein Medical Center,* 384 Pa. Superior Ct. 503, 559 A.2d 550 (1989); *petition for*

*allowance of appeal denied,* 527 Pa. 635, 592 A.2d 1302 (1990).

■ The tenants' requested jury instruction 6A framed this issue precisely:

I am instructing you that the definition of fair market value in place used by plaintiffs' appraiser, George Sinclair, is the correct value for purposes of this condemnation case.

(R., p. 243a.)

Therefore, this issue is not waived and we shall address and dispose of it accordingly.

■ If the trial judge determines that the proposed point for charge is not strictly in accordance with the facts in evidence or the law of the case, the judge is not bound to remold the requested charge and may refuse it. *Schneider v. Lindenmuth–Cline Agency,* 423 Pa. Superior Ct. 73, 620 A.2d 505 (1993). The parties herein presented the trial court with their respective points for charge. As to the tenants' requested instruction 6A quoted above, Judge Wright refused to give this instruction as presented, stating that "[y]ou're asking for directed verdicts, really." (N.T., January 21, 1992, p.1942–43.) Accordingly, we conclude that the trial court did not commit reversible error in refusing to instruct the jury as requested by the tenants.

Third, the tenants argue that the trial court erred in admitting the testimony of the RDA's two expert witnesses, Alfred Sundberg and Robert Jones. The tenants assert that both experts were incompetent to testify because neither had any experience in condemnation appraisals nor were they qualified experts of the AEUD. The tenants argue that the experts' testimony should have been disallowed or stricken and a new trial granted on the proposition that the RDA's experts' testimony was either lacking in substantiality when compared with the tenants' evidence or it was not in accordance with the applicable

---

8. In this case, the stipulations, as discussed *infra,* were not part of the Board's report. Moreover, the RDA objected to not only the amount of damages that the Board awarded and that was allegedly stipulated to by the parties, but also to the tenants' entitlement to any damages under the Code. *Yudacufski* is therefore distinguishable.

9. The Assembled Economic Unit Doctrine is a judicially created doctrine which determines whether machinery, equipment and fixtures constitutes part of an assembled economic unit and therefore part of the condemned realty; the owner of the machinery, equipment and fixtures is entitled to just compensation for its taking. *Singer v. Redevelopment Authority of Oil City,* 437 Pa. 55, 261 A.2d 594 (1970).

law. *Scranton Penn Furniture Company v. City of Scranton*, 92 Pa.Cmwlth. 45, 498 A.2d 469 (1985); *Redevelopment Authority of the City of Philadelphia v. United Novelty & Premium Company, Inc.*, 11 Pa.Cmwlth. 216, 314 A.2d 553 (1973).

RDA argues that the tenants did not raise this issue in their post-trial motions as required under Pennsylvania Rule of Civil Procedure No. 227.1; therefore, it is waived. *Dilliplaine*. Alternatively, RDA argues that both experts were qualified and the weight to be given their testimony was a jury determination. *Lira*.

■ Addressing the issue of waiver first, we disagree that the tenants have not properly preserved this issue for our review. At the trial, tenants' counsel objected to the qualifications of Jones and then later moved to strike his testimony, which the trial court denied. (R., pp. 707a, 738a.) Tenants' counsel also moved to strike the testimony of Sundberg, which the trial court also denied. (R., p. 794a.) In their post-trial motions, the tenants specifically object to the trial court's decision to allow the RDA to present the testimony of Sundberg and Jones (Issue 8, R., p. 256a), and that the trial court erred in failing to strike their testimony. (Issue 9, R., p. 256a.) However, while this issue was properly preserved, we conclude that the trial court did not commit reversible error.

■ The trial court has wide discretion in deciding whether to allow the admission of expert testimony into evidence, which decision is not subject to reversal absent a clear abuse of discretion. *Allegheny Ludlum Corp. v. Westmoreland County Municipal Authority*, 659 A.2d 20 (Pa.Cmwlth.1995). The threshold for qualifying as an expert is deliberately set low, so that " '[i]f the witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his [testimony] is for the jury.' " *Lira*, 384 Pa. Superior Ct. at 509, 559 A.2d at 552 (1989) (citation omitted).

■ The testimony of Mr. Jones regarding his qualifications spanned over twenty pages of notes of testimony and reveal that he had been a machinery and equipment appraiser for 29 years, including 5 years with the H.L. Yoh Company doing machinery and equipment appraisals for condemnation purposes, and 20 years or more with various appraisal companies conducting machinery and inventory valuations. (N.T., January 16, 1992, pp. 1670–99.) Mr. Jones estimated that he had done "thousands" of machinery and equipment appraisals. (*Id.*, p. 1674.) Although Mr. Jones testified that he had never been qualified as an expert in the AEUD before, he believed that he had applied the concept to his valuations thousands of times in the past. (*Id.*, p. 1691.)

With respect to Mr. Sundberg, he is a senior member of the American Society of Appraisers, as is George Sinclair, tenants' appraisal expert. Mr. Sundberg also testified to extensive experience as a machinery and equipment appraiser, in which he conducted appraisals for various reasons such as for insurance, condemnation, fair market values and tax values. (N.T., January 17, 1992, pp. 1795–1805.) Mr. Sundberg testified that he had done numerous appraisals for the RDA over the years and has been qualified as an expert in the Court of Common Pleas in Philadelphia many times. (*Id.*, pp. 1794–1800.)

Since the weight to be accorded the testimony of Mr. Sundberg and Mr. Jones was for the jury to decide, we find no error in the trial court allowing them to testify as experts in this matter.

Fourth, we address the tenants' next issue that the trial court erred in failing to award all of them costs and attorneys' fees under section 609 of the Code, 26 P.S. § 1–609. The tenants argue that because they were condemnees under the Code, a recognition of the fact that they had been deprived of a real property interest, they may properly seek section 609 damages. The RDA counters that because only S & S Hat Company received general damages, they are the only party who could rightfully be awarded additional fees and costs.

Section 609 provides that:

Where proceedings are instituted by a condemnee under section 502(e), a judgment awarding compensation to the con-

demnee for the taking of property shall include reimbursement of reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred. (Footnote omitted.)

While the trial court agreed that all the tenants were condemnees, it also concluded that because only S & S Hat Company received an award for a "taking," it was the only party entitled to reimbursement under section 609. The trial court bolstered its interpretation of section 609 on its reading of *Holmes Protection of Pittsburgh v. Port Authority of Allegheny County*, 90 Pa.Cmwlth. 342, 495 A.2d 630 (1985); *petition for allowance of appeal denied*, 519 Pa. 656, 546 A.2d 60 (1988), in which this court held that there could be no compensation for the taking of personal property where no real estate had been taken. We agree with the trial court's conclusions.

■■■■■■ As tenants/condemnees, there are two property interests which might be subject to condemnation; namely, the bonus value of the tenant's remaining lease term, and the value of that portion of its machinery, equipment and fixtures that has become a part of the lessor's condemned realty. None of the tenants made any claims for the "bonus value" of their leases; accordingly, the only property interest of theirs which

would be subject to a taking would be their accreted machinery, equipment and fixtures. These claims were presented to the jury, which determined that only S & S Hat Company was entitled to general damages. We believe that section 609 costs and fees, as distinguished from section 601A,[10] may be awarded only to condemnees who have been awarded damages for a "taking" of property. Therefore, we agree with the trial court's denial of the tenants' claim for section 609 costs and fees.

Finally, the tenants argue that the trial court erred in failing to award delay compensation at prevailing commercial loan rates as our Supreme Court has enunciated in *Hughes v. Department of Transportation*, 514 Pa. 300, 523 A.2d 747 (1987), and in failing to award prejudgment interest on the special damages awarded to them. Although the RDA argues that these issues have been waived, *Dilliplaine*, we disagree and shall address and dispose of both issues.[11]

■■■■■ In *Hughes*, the Supreme Court held that delay compensation should be awarded at the commercial loan rates of interest prevailing during the detention period in question. This holding was followed by this court in *Appeal of Pennsylvania Department of Transportation*, 146 Pa.Cmwlth. 344, 605

---

**10.** Section 601A provides in pertinent part:

(a) Any displaced person shall be reimbursed for reasonable expenses incurred in moving himself and his family and for the removal, transportation, and reinstallation of personal property.

. . . .

(b) Any displaced person who is displaced from his place of business or from his farm operation shall be entitled, in addition to any payment received under subsection (a) of this section, to damages for dislocation of such business or farm operation as follows:

(1) Actual direct losses with reference to personal property, but not to exceed the greater of (i) the reasonable expenses which would have been required to relocate such personal property, or (ii) the value in place of such personal property as cannot be moved without substantially destroying or diminishing its value. . . .

(2) In lieu of damages provided in clause (1) hereof, at the option of the displaced person, an amount not to exceed ten thousand dollars ($10,000) to be determined by taking fifty per cent of the difference if any, between the origi-

nal cost of the personal property to the displaced person or the replacement cost of equivalent property at the time of sale, whichever is lower, and the net proceeds obtained by the displaced person at a commercially reasonable private or public sale. . . .

(3) Actual reasonable expenses in searching for a replacement business or farm determined in accordance with regulations promulgated under this act.

(4) Actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization or small business at its new site, in accordance with criteria to be established by regulation, but not to exceed ten thousand dollars ($10,000).

(5) In lieu of damages under subsection (a) and clause (1), (2), (3) or (4) of this subsection, damages in an amount equal to the average annual net earnings but not more than twenty thousand dollars ($20,000) nor less than one thousand dollars ($1,000). . . .

**11.** These issues were raised and properly preserved as issues 11 and 21 in the tenants' motion for post-trial relief. (R.. pp. 256a–57a; 260a.)

A.2d 1286 (1992). However, the trial court, although recognizing that the jury's award of delay compensation at 5% was inadequate, followed *Wasserott v. PennDOT*, 13 D. & C. 4th 593 (Luzerne Co. 1991), which calculated delay damages in a condemnation case using the rates of interest proscribed by Pennsylvania Rule of Civil Procedure No. 238 for general damages in civil trials, which refers to the prime rate as published in the first edition of The Wall Street Journal each year. Therefore, the trial court erred in not molding the verdict to award delay compensation at the prevailing commercial loan rates prevailing during the detention period in question.

■■■ The tenants also argue that they should be awarded prejudgment interest on their special damages award. The RDA asserts that section 601A of the Code does not authorize or provide for interest upon the award of special damages, citing *Redevelopment Authority of the City of Philadelphia v. Associated Retail Stores*, 47 Pa.Cmwlth. 268, 408 A.2d 181 (1979), as authority for its position.

In *Associated Retail Stores*, this court held that "[u]nlike article VI which contains section 611, [setting forth a mandatory requirement of delay compensation for delays in payment of just compensation for the taking of property], article VI–A of the Code does not provide delay compensation." 408 A.2d at 182. Accordingly, the trial court did not err in not awarding prejudgment damages.

### III. RDA's Cross–Appeal

#### A. Issues

Turning now to the RDA's cross-appeal, we shall address a number of issues which it has raised for our review:

1. Whether the trial court erred in holding that the tenants were condemnees.

2. Whether the trial court erred in failing to strike George Sinclair's testimony because his opinion was expressed without a reasonable degree of certainty.

3. Whether the trial court erred in failing to strike George Sinclair's testimony because he used a standard of value not permitted by the Code.

4. Whether the trial court erred in permitting 9 of 11 tenants to pursue AEUD damages when they had relocated their businesses.

5. Whether the trial court erred in permitting the tenants to seek AEUD damages when they left the premises at the end of their leases.

6. Whether the trial court erred in permitting the tenants to pursue AEUD damages when their leases limited them to special damages for displacement only.

7. Whether the trial court erred in permitting the tenants to seek damages for fixtures that had become the property of the RDA pursuant to their leases.

8. Whether the trial court erred in failing to dismiss the claims of India Overseas, Penn Dry Goods and Supreme Suitcase for failing to produce at trial the party having the requisite interest and standing to receive special damages.

9. Whether the trial court erred in permitting Irving Wenger business dislocation damages when he did not prove a substantial loss of business.

#### B. Discussion

The RDA first argues that the tenants were not "condemnees" but merely "displaced persons" under the Code. We disagree, and believe that this issue was answered by this court with some finality more than six years ago. *See Marx Stationery I.*

■■■ In *Marx Stationery I*, this court *conclusively* determined that the tenants herein *were* "condemnees" and, therefore, affirmed the appointment of a Board of Viewers. *Marx Stationery I*, 538 A.2d at 650. Accordingly, we believe that the trial court properly allowed the tenants, as "condemnees," to present their claims for damages under the AEUD and we will not revisit this issue.[12]

12. A condemnee is "the owner of a property interest taken, injured or destroyed." 26 P.S. § 1–201(2). A tenant can be a "condemnee" within the meaning of section 201(2) of the Code, 26 P.S. § 1–201(2). *Graham Realty Co. Appeal*, 67 Pa.Cmwlth. 318, 447 A.2d 342 (1982). More-

■ The second and third issues raised by the RDA concern the tenants' expert appraiser, George Sinclair. In this appeal, the RDA takes issue with the fact that Mr. Sinclair did not express his opinions within a reasonable degree of "appraisal certainty," and it also contends that he used an impermissible standard of valuation.

The tenants argue that the RDA has waived these issues because they were not raised either in preliminary objections to their petition for appointment of viewers [13] or in the RDA's appeal to the trial court from the Board's report.[14] We agree; therefore, we shall not address this issue.[15]

Fourth, the RDA argues that because nine of the eleven tenants were able to relocate their businesses, the trial court should not have permitted those nine to pursue damages under the AEUD. The RDA argues that the tenants were allowed to pursue double damages by claiming general damages under the AEUD for their machinery, equipment and fixtures and special damages for moving and reinstallation of the same items, which practice is prohibited by *Redevelopment Authority of Lancaster v. Wabank Real Estate and Investment Company, Inc.*, 34 Pa.Cmwlth. 1, 382 A.2d 785 (1978). The tenants vehemently deny that they were "double dipping" and assert that unlike the condemnee in *Wabank* who was able to remove and relocate most of its machinery, equipment and fixtures, the tenants sought application of the AEUD for a majority of items which they contend were immovable and which they left behind.

The AEUD, or the Assembled Economic Unit Doctrine, as noted previously in this opinion, is a judicially created doctrine which determines whether machinery, equipment and fixtures constitutes part of an assembled economic unit and, therefore, part of the condemned realty; the owner of the machinery, equipment and fixtures is entitled to just compensation for its taking. *Singer.* The AEUD is applicable in circumstances where:

> the condemned building is so unique that a comparable building was not available or adaptable within a reasonable distance from which the condemnee drew his patrons, all machinery, equipment, and tools, even though they could be moved, may nevertheless be left there by the owner, and he will be entitled to receive the fair market value, in place, as part of the real estate.

*Redevelopment Authority of the County of Washington v. Sepesy*, 107 Pa.Cmwlth. 227, 528 A.2d 287, 288 (1987); *petition for allowance of appeal denied, Sepesy v. Redevelopment Authority of the County of Washington*, 517 Pa. 601, 535 A.2d 1059 (1987) (emphasis omitted).

■ It remains, however, a question for the jury to determine whether the AEUD is applicable in a particular case. *Benkovitz v. Urban Redevelopment Authority of the*

---

over, the AEUD is applicable to a tenant-condemnee. *Redevelopment Authority of the City of Philadelphia v. Driscoll*, 45 Pa.Cmwlth. 202, 405 A.2d 975 (1979). A party asserting a *de facto* taking must be a "condemnee" and not merely a "displaced person" in order to be entitled to relocation damages. *Appeal of Radio Broadcasting Co.*, 55 Pa.Cmwlth. 147, 423 A.2d 444 (1980); *cert. denied*, 454 U.S. 941, 102 S.Ct. 477, 70 L.Ed.2d 249 (1981).

13. *See Carroll Township v. Jones*, 85 Pa.Cmwlth. 400, 481 A.2d 1260 (1984). This court held that the condemnor had waived its right to contest the landowner's title to the property by failing to file preliminary objections that raised the issue. In so holding, this court determined that "[t]he Code has established a special role for preliminary objection proceedings ... in that they there provide a vehicle by which the common pleas court can resolve all legal and factual questions of entitlement at the outset ... before appointing the viewers and assigning them to do their work of quantifying an award." *Id.* 481 A.2d at 1261. Accordingly, " 'any'—that is, all—entitlement defenses must be raised by that mode." *Id.*

14. *See Jennings v. Department of Transportation*, 38 Pa.Cmwlth. 206, 395 A.2d 582 (1978) (PennDot precluded from arguing issue of de facto taking when it did not specifically object to same in its appeal from Board's report).

15. Even if we were to address this issue, we would affirm the trial court's disposition of this issue in that there is no authority for the proposition that an appraiser must express his or her opinion within a reasonable degree of appraisal certainty, as asserted by the RDA with citation to *McCann v. Amy Joy Donut Shops*, 325 Pa. Superior Ct. 340, 472 A.2d 1149 (1984). *McCann* holds that a medical expert must express his/her opinion within a reasonable degree of medical certainty.

*City of Pittsburgh,* 56 Pa.Cmwlth. 523, 425 A.2d 1178 (1981); *Redevelopment Authority of the City of Philadelphia v. General Mills, Inc.,* 44 Pa.Cmwlth. 391, 404 A.2d 710 (1979). Accordingly, we conclude that the trial court properly left to the jury the applicability of the AEUD to the tenants' claims.

The remaining issues raised by the RDA have been waived by the RDA's failure to raise them either by preliminary objection to the tenants' petition for appointment of viewers or in the RDA's subsequent appeal from the Board's report.[16] Therefore, for all of the reasons stated above, we affirm the trial court's denial of the RDA's post-trial motions.

## IV. Conclusion

Accordingly, the order of the trial court is affirmed insofar as it denies the tenants' and the RDA's motions for post-trial relief. The order of the trial court is vacated with respect to that portion which awards delay damages to S & S Hat Company. We remand to the trial court to determine the correct rate of delay damages awarded to S & S Hat Company in accordance with this opinion.

### ORDER

NOW, this 30th day of April, 1996, the order of the Court of Common Pleas of Philadelphia County, dated February 3, 1995, is vacated insofar as it awarded delay damages in the amount of $23,222.81 to S & S Hat Company, and this case is remanded for further proceedings consistent with the foregoing opinion. Said order is affirmed in all other respects.

Jurisdiction relinquished.

---

**16.** *See* footnotes 13 and 14, *supra,* for authority for our disposition of the RDA's remaining issues.