560 A.2d 814

Nicholas G. PERAKIS

v.

LUCERNE ENERGY, INC. and AG Services, Inc.

v.

AMERICAN BANK AND TRUST COMPANY OF PENNSYL-
VANIA, R–Towne Development Company, and York
County Industrial Development Authority.

Superior Court of Pennsylvania.

Argued Jan. 26, 1989.

Filed June 21, 1989.

Michael Handler, Indiana, for appellants.

Morton J. Earley, Indiana, for Perakis, appellee.

Before CAVANAUGH, DEL SOLE and MONTGOMERY, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment entered in favor of a commercial landlord, appellee Perakis, for the amount of unpaid rent due from tenants after they had vacated the

premises prior to the expiration of the lease term. On appeal, the tenants allege error by the lower court in not finding that under the terms of the lease agreement they were free to terminate the lease prior to the stated end of term date.

The property in question is a commercial facility which landlord's predecessor in interest, R–Towne Development Company, had leased to tenants, Lucerne Energy, Inc. and A.G. Services, Inc. Perakis had arranged to purchase the property with financing provided through the York County Industrial Development Authority (IDA) in order to take advantage of certain federal tax exemptions. On December 31, 1984 title to the property was conveyed to IDA, and Perakis leased the property from IDA after it issued notes and mortgages to American Bank and R–Towne. On the same date R–Towne assigned to Perakis its interest in the lease with appellants.

On January 21, 1985, appellants attorney informed Perakis that appellants intended to vacate the premises by February 1, 1985, eleven months prior to the termination date set in the lease. The basis for this early termination was the asserted breach by landlord of the paragraphs in the lease relating to a taking for public use and quiet enjoyment. No rental payments were remitted after January, 1985.

The lower court found that there had been no breach by landlord and, therefore, rental for each of the remaining eleven months was due. On appeal, tenants present argument that the terms of the lease allowed them to terminate the lease and vacate the premises.

The clauses of the lease in question provide as follows:

12. *Taking for Public Use*—Lessor agrees that if said premises, or any part thereof, shall be taken by any Government or Governmental authority by eminent domain proceedings or otherwise, for any purpose whatsoever, Lessee shall have the right to terminate this Lease at the end of any rental month by serving upon Lessor not less than ten (10) days' previous notice in writing of its election so to do, said termi-

nation, however, to be subject to all the rights and liabilities of the parties hereto that may have accrued hereunder at the time of such termination; but if Lessee should not elect to terminate, then from and after the taking as aforesaid the rent reserved herein shall abate in a just and fair proportion.

17. *Quiet Enjoyment*—Provided Lessee performs all its covenants, agreements and obligations hereunder, Lessor will warrant and defend Lessee in the peaceful and quiet enjoyment of the premises but only against the lawful claims of all persons claiming by, through or under Lessor.

■ We agree with the analysis of the lower court that the transaction did not constitute a "taking" within the meaning of paragraph 12. In order for lessee to have the right to terminate the lease a governmental authority must engage in a taking of the premises. The voluntary sale of the property by one private owner to another private equitable owner, through the medium of a governmental authority as legal title holder, is not a taking.

Not every acquisition of land by a governmental authority is a taking. Where the public authority acquired title to land through private negotiation and sale, rather than by condemnation, there is no taking of the property. *See Petition of Fisher*, 433 Pa. 113, 248 A.2d 849 (1969). The element of compulsion that is necessary for a taking to occur is missing from the instant situation.

Appellants argue that the phrase "by eminent domain proceedings or otherwise, for any purpose whatsoever" brings the transaction within the scope of paragraph 12. This ignores, however, the prerequisite that there be a taking. The quoted phrase relates to the means by which the government authority effectuates the taking; it does not expand the coverage to other sorts of transfers that do not involve a taking.

Further, the title of the paragraph, "Taking for Public Use," indicates that the paragraph relates to the concept of

a condemnation action, as provided for in the Eminent Domain Code, 26 P.S. § 1–101 *et seq.* Condemnation may occur by a declaration of taking, an overt exercise of the power of eminent domain, or by a de facto taking. *See, City of Philadelphia v. Sorrentino,* 95 Cmwlth.Ct. 236, 505 A.2d 373 (1986). Outside of this context, the phrase "taking for public use" does not appear. "In the absence of peculiar conditions, the common acceptance of the use of the word must prevail." *Staisey v. Tucker,* 7 Cmwlth.Ct. 649, 300 A.2d 518 (1973), citing *Commonwealth v. Dickert,* 195 Pa. 234, 241, 45 A. 1058, 1061 (1900).

■ We also agree with the lower court's treatment of the alleged breach of the covenant of quiet enjoyment. The averments of harm that appellants would suffer, if they had remained tenants of the premises, are entirely speculative in nature. They presented no evidence in support of the claim that the purported restrictions imposed upon them as a "principal user" of the property by the Internal Revenue Code, 26 U.S.C. § 103(b)(6)(O), then in effect, had actually damaged them. The mere possibility that tenants' business opportunities relating to other properties may have been effected by the sale of the leased premises does not constitute a breach of their right to quiet enjoyment.

Judgment affirmed.