**John A. KOSCHAK, D.P.M.**

v.

**REDEVELOPMENT AUTHORITY OF the CITY OF WILKES– BARRE, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 17, 2000.

Decided Aug. 28, 2000.

John G. Dean, Scranton, for appellant.

William R. Keller, Wilkes–Barre, for appellee.

Before SMITH, Judge, PELLEGRINI, Judge and RODGERS, Senior Judge.

SMITH, Judge.

The Redevelopment Authority of the City of Wilkes–Barre (the Authority) appeals from an order of the Court of Common Pleas of Luzerne County that denied preliminary objections filed by the Authority in response to a petition for the appointment of viewers filed by John A. Koschak, D.P.M. The court directed that the parties proceed before a board of view to assess the damages, if any, to which Dr. Koschak might be entitled. The Authority questions whether the acquisition of property through private negotiations and sale, rather than through the exercise of eminent domain power, implicates the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101—1–903. In addition it asks whether a person with no property or leasehold interest at the time property is acquired is entitled to compensation under the Code.

The trial court found that Thomas P. Jiunta, D.P.M., a podiatrist, was the Authority's predecessor in title to the property at 55 South Washington Street, Wilkes–Barre, where he maintained his professional practice and office. Dr. Koschak shared office space with Dr. Jiunta at the premises pursuant to an Office Sharing and Right of First Refusal Agreement (Agreement). Section 19 of the Agreement provided in part:

> If Jiunta shall determine to sell the Premises to any person, entity or governmental body, for any reason, then Jiunta, in his sole and absolute discretion, may declare, prior to the closing date of such sale, this Agreement and all rights of Koschak hereunder terminated and ended without any further right on the part of Koschak to save such termination.

Dr. Jiunta provided Dr. Koschak with notice on May 4, 1999 that Dr. Jiunta and his wife had entered into an agreement with the Authority to sell the subject premises, with the closing to take place on May 5, 1999. Dr. Koschak filed a petition for the appointment of a board of view on July 14, 1999, alleging that he was a condemnee and a tenant with a leasehold interest in the property acquired by the Authority. The Authority filed preliminary objections to the petition on August 2, 1999.

The trial court issued an order on September 28, 1999 denying the preliminary objections and directing the parties to proceed before the board of view.[1] The court's opinion in support of its order pursuant to Pa.R.A.P. 1925(a) recited the facts and stated that they appeared to be unequivocal and, without more, would seem to sustain the Authority's position. The court noted, however, that the Authority's Exhibit B attached to its preliminary ob-

---

1. This Court's review of the trial court's order dismissing preliminary objections is limited to determining whether the trial court's findings are supported by competent evidence and whether it abused its discretion or committed an error of law. *Elser v. Commonwealth, Department of Transportation*, 651 A.2d 567 (Pa.Cmwlth.1994).

jections included an undated Agreement of Sale for the property, which specified a "settlement (closing) date of April 9, 1999" when Dr. Koschak's leasehold interest was still in existence. In the court's view, the circumstances raised a material issue of fact as to whether Dr. Koschak's tenancy continued in fact and in law without an adequate and timely notice of termination. In addition the court agreed that Dr. Koschak's status was that of "a displaced person" as defined in Section 201(8)(i)(A)(I) of the Code, 26 P.S. § 1–201(8)(i)(A)(I), to include: "[a]ny condemnee or other person who moves from real property or moves his personal property from real property: as a direct result of a written notice of intent to acquire or the acquisition of such real property, in whole or in part, for a program or project undertaken by an acquiring agency...."

The Authority first contends that governmental actions that are not performed through the power of eminent domain do not implicate the Code and cannot form the basis for proceeding in eminent domain, citing *German v. City of Philadelphia*, 683 A.2d 323 (Pa.Cmwlth.1996) (stating that if a property is demolished under a municipality's police power, the demolition is not compensable under the Code). In particular, the Superior Court held in *Perakis v. Lucerne Energy, Inc.*, 385 Pa.Super. 302, 560 A.2d 814 (1989), that there was no taking where a public authority acquired a property through private negotiation and sale – the necessary element of compulsion was missing. The court stated that a condemnation under the Code occurs only by a declaration of taking, an overt exercise of eminent domain power or a de facto taking. Here, the Authority notes, the record shows that the acquisition was through a voluntary, fair market value negotiated purchase, and nothing in the record indicates that the Authority purchased the property in lieu of commencing condemnation proceedings. *See Local 325 of the United Food & Commercial Workers Union v. Commonwealth,*

*Department of Transportation,* 132 Pa. Cmwlth. 1, 571 A.2d 557 (1990).

Dr. Koschak counter-states the first question as whether a leasehold interest, which was not terminated prior to acquisition, supports a claim for a de facto taking. Section 502(e) of the Code, 26 P.S. § 1–502(e), authorizes a person to file a petition for the appointment of viewers "[i]f there has been a compensable injury suffered and no declaration of taking therefor has been filed...." Dr. Koschak expressly concedes that if his lease were terminated by the May 4, 1999 letter, then he would have no claim for a de facto taking because he no longer had any property interest. *Fisher v. Pittsburgh Public Parking Authority,* 433 Pa. 113, 248 A.2d 849 (1969) (holding that a tenant whose lease terminates before condemnation suffers no deprivation of possession or beneficial use and suffers no injury compensable under the Code). He asserts, however, that the undated Agreement of Sale provided in Paragraph 3(E) for a settlement date of April 9, 1999, at which time Dr. Koschak's leasehold interest continued to exist.

In a reply brief, the Authority expresses indignation that Dr. Koschak advances a theory of de facto taking before this Court, when he took the position in his brief to the trial court in opposition to the preliminary objections that he no longer had any property interest when Dr. Jiunta terminated his lease on May 4, 1999, and a de facto taking did not occur. A party may be prevented from "playing fast and loose" with the Court by the doctrine of judicial estoppel, which is designed to uphold the dignity of the Court by preventing litigants from abusing the judicial process by changing positions as the moment requires. *Trowbridge v. Scranton Artificial Limb Co.,* 560 Pa. 640, 747 A.2d 862 (2000) (citing *Ligon v. Middletown Area School Dist.,* 136 Pa.Cmwlth. 566, 584 A.2d 376 (1990)). The Court agrees that judi-

cial estoppel bars the de facto taking argument.[2]

Next the Authority argues that even if the Code is implicated here, Dr. Koschak is not entitled to dislocation damages. On this point Dr. Koschak asserts that a person with no leasehold interest when property is acquired may still be entitled to dislocation damages as a displaced person under Section 201(8) of the Code. Dr. Koschak stresses that Section 201(8)(i)(C) provides that the term also means "[a] person who was in occupancy of the real property on or before the date of acquisition notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement."

■ The Authority notes that the Supreme Court, in *Martin Media v. Commonwealth, Department of Transportation*, 560 Pa. 215, 743 A.2d 448 (2000), considered the Section 201(8) definition of displaced person. There a billboard company executed a lease to rent property for a sign with a company that had no enforceable title to the property. The court stated that to be a displaced person, the billboard company must have moved from real property due to the notice from the Department of Transportation of its intent to acquire the property. However, "[a] party who has no legal right to use a property cannot logically be considered a displaced person when the property is taken pursuant to eminent domain powers." *Martin Media*, 560 Pa. at 219, 743 A.2d at 451.

■ The Court agrees with the Authority that Dr. Koschak is not a displaced person under Section 201(8). First, as the Authority notes, the Court has already

determined that Dr. Koschak no longer had any legal right to occupy the premises after May 4, 1999. Section 201(8)(ii)(A) provides that a displaced person does not include "a person who unlawfully occupies the displacement dwelling...." Further, this record includes no showing of the essential element under Section 201(8)(i)(A)(I) that the acquisition was "for a program or project undertaken by an acquiring agency...." The Sellers Acknowledgement of Voluntary Arm's Length Purchase Offer and Waiver of Relocation Payments and Assistance, attached in Exhibit B to the Authority's preliminary objections, states that if the Jiuntas did not wish to sell their property the Authority would not have acquired the property, that it would not have used its power of eminent domain and that the Jiuntas were ineligible for relocation payments under any federal statute or other law or regulation. Because the Authority's purchase of the subject property was through private negotiations and sale rather than through its power under the Code, the Court is compelled to reverse the trial court's order.

### ORDER

AND NOW, this 28th day of August, 2000, the order of the Court of Common Pleas of Luzerne County is reversed.

---

**2.** Were the argument to be considered, it would fail. This position, like the trial court's analysis, is based upon a conclusion that the earlier settlement agreement between Dr. Jiunta and the Authority was the same as the "closing" under Paragraph 19 of the Agreement, before which Dr. Jiunta had to declare the rights of Dr. Koschak to be terminated.

Nothing in the Agreement, however, appears to confuse the commonly distinguished concepts of "settlement agreement" and "closing," which according to Dr. Koschak occurred on or about May 5, 1999. *See Klein v. Walton*, 413 Pa.Super. 150, 604 A.2d 1064 (1992) (illustrating the difference).