Ellen CARR, Janet Janzer, Diane Kanczes, Matthew Kanczes, Matthew Kanczes, Jr., Heather Lesko, Tina McWhirter, William McWhirter, Mifflin Road Mobile Home Park, Kathleen Reed, William Reed, Betti Strom, Robert Strom, Joan Tate and John Thompson, Appellants,

v.

CITY OF PITTSBURGH.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2003.

Decided Dec. 9, 2003.

Eileen D. Yacknin, Pittsburgh, for appellant.

George R. Specter, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Ellen Carr, *et al.* (Appellants) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) which sustained the preliminary objections filed by the City of Pittsburgh (City) and dismissed the Petition for Appointment of Viewers (Petition) filed by Appellants. We affirm.

Appellants are former residents of the Mifflin Road Mobile Home Park (Park), which was located in the 31st Ward of the City of Pittsburgh, also known as Lincoln Place. Edward J. Raimondi, Jr. (Raimondi) was the owner of the Park, which contained approximately thirty different mobile homes. Some of the residents owned their mobile homes and leased the lot upon which the mobile home was situated from Raimondi pursuant to a verbal month-to-month lease. Other residents rented the mobile homes in which they resided from Raimondi pursuant to a verbal month-to-month lease. In the Fall of 2001, the City agreed to purchase the Park property from Raimondi for the purpose of building a community and recreation center. This purchase was conditioned upon Raimondi's removal of the residents from the Park. In order to accomplish this, Raimondi served eviction notices upon Appellants informing them that the Park had been sold and that they had sixty days to vacate the Park and move their mobile homes. However, Appellants did not have the financial resources to move their mobile homes and, after Raimondi initiated eviction proceedings and they left the park, their mobile homes were destroyed. In their brief, Appellants state that "[w]hile the Petition for Appointment of Viewers was pending, and prior to the lower court's decision in that case, the remaining tenants settled their claims against Raimondi and vacated their mobile home trailers, and Raimondi settled and discontinued the pending eviction actions. It was never judicially determined whether Raimondi's lease termination notices to [Appellants] were legally valid." (Appellants' brief, p. 8).

At the time they filed their Petition, some of the Appellants were still living in the Park. In their Petition, Appellants allege, in pertinent part, that:

37. The City's condition that Mr. Raimondi cause the removal of the tenants/mobile home owners prior to acquisition, coupled with the City's offer to pay Mr. Raimondi approximately $150,000 over and above the appraised value of the [Park], was an attempt to avoid responsibility under the Pennsylvania Eminent Domain Code and the federal Housing and Community Development Act, and was the functional equivalent of a written notice from the City to the Plaintiffs to vacate their property.

38. Alternatively, Mr. Raimondi has acted, and continues to act, as the agent of the City of Pittsburgh, in carrying out conduct intended to compel the departures and removals of the [Appellants] from their homes and residents at the [Park].

39. The actions of the City of Pittsburgh, in entering into a letter agree-

ment to acquire the [Park] for a public purpose, but agreeing to purchase the Park only upon the departure or forced removal of all the mobile home park tenant/mobile home owners, constitutes a de facto taking of the [Appellants'] property interests.

40. The actions of the City of Pittsburgh, in entering into a letter agreement to acquire the [Park] for a public purpose, but agreeing to purchase the Park only upon the departure or forced removal of all mobile home tenants/mobile home owners, has resulted, and continues to result in the substantial deprivation of the [Appellants'] use and enjoyment of their leased and owned property.

. . .

44. The [Appellants] are "displaced persons" within the meaning of Sections 1–201(8)(i)(A) and (C) of the Pennsylvania Eminent Domain Code, and are therefore entitled to (1) moving and related expenses pursuant to 26 P.S. § 1–601A, and (2) replacement housing payments pursuant to 26 P.S. § 1–602 and/or 26 P.S. § 1–603A.

45. [Appellants] are also "displaced persons" within the meaning of Section 104(d) of the Housing and Community Development Act of 1974 and its implementing regulations at 24 C.F.R. § 570.488a(2), and are therefore entitled to moving and related expenses and replacement housing payments, pursuant to 49 CFR Par 24 Subpart F.

WHEREFORE, [Appellants] petition this Court to appoint a Board of Viewers to assess damages for which they will be compensated, pursuant to the Eminent Domain Code.

■ The City filed preliminary objections to Appellants' Petition asserting generally that the acquisition of the Park was through a private, voluntary negotiated purchase and that nothing in the transaction implicates the exercise of the power of eminent domain. In addition, the City asserted that the Appellants' leases were terminated and that therefore they are not "displaced persons" under the Eminent Domain Code. By opinion and order dated January 29, 2003, the trial court sustained the City's preliminary objections because "the sale of the property was through private negotiations and sale and ... [Appellants] had no legal right to occupy the premises at the time of the sale of the property." In support of its decision, the trial court cited this Court's decision in *Koschak v. Redevelopment Authority of the City of Wilkes–Barre,* 758 A.2d 291 (Pa.Cmwlth.2000). This appeal followed.[1]

On appeal, Appellants argue that the actions of the City through Raimondi resulted in a de facto taking. Specifically, Appellants assert that they are entitled to relocation assistance provided for by "displaced persons" the Eminent Domain Code (Code) because Raimondi was acting as an agent of the City when he terminated their leases for the purpose of selling the Park to the City to be used for a public purpose.[2]

Section 201 of the Code contains several definitions that are relevant to this matter:

---

1. Our scope of review of a trial court's dismissal of preliminary objections to a petition for appointment of a board of viewers is limited to determining whether the trial court's findings are supported by competent evidence in the record, whether the trial court abused its discretion or whether it committed an error of law. *Genter v. Blair County Convention and Sports Facilities Authority,* 805 A.2d 51 (Pa.Cmwlth.2002).

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–101—1–903.

The following words, when used in this act, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section:

(1) **"Condemn"** means to take, injure or destroy private property by authority of law for a public purpose.

(2) **"Condemnee"** means the owner of a property interest taken, injured or destroyed, but does not include a mortgagee, judgment creditor or other lienholder.

(3) **"Condemnor"** means the acquiring agency, including the Commonwealth of Pennsylvania, taking, injuring or destroying private property under authority of law for a public purpose.

. . .

(5) **"Acquiring agency"** means any entity vested with the power of eminent domain by the laws of the Commonwealth, including the Commonwealth. For purposes of Article VI–A, **"acquiring agency"** shall also include other agencies or persons which are carrying out a program or project to the extent that they cause a person to become a displaced person.

. . .

(8) **"Displaced person"**

(i) Means:

(A) Any condemnee or other person who moves from real property or moves his personal property from real property:

(I) as a direct result of a written notice of intent to acquire or the acquisition of such real property, in whole or in part, for a program or project undertaken by an acquiring agency; or

(II) on which such person is a residential tenant or conducts a small business, a farm operation or a business as defined in section 201(7)(iv) as a direct result of rehabilitation, demolition or such other displacing activity under a program or project undertaken by an acquiring agency in any case in which the displacement is permanent.

. . .

(C) A person who was in occupancy of the real property on or before the date of acquisition notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement.

(ii) Does not include:

(A) a person who unlawfully occupies the displacement dwelling or occupied the dwelling for the purpose of obtaining assistance under this act . . .

26 P.S. § 1–201.[3] Section 601 of the Code, 26 P.S. § 1–601, provides that condemnees are entitled to just compensation for the taking, injury or destruction of their property. In addition, Section 601A of the Code provides that "[a]ny *displaced person* shall be reimbursed for reasonable expenses incurred in moving himself and his family and for the removal, transportation, and reinstallation of personal property." (emphasis added). Furthermore, Section 603A provides for replacement housing payments for tenants who are displaced.[4] Since it is undisputed that there was no formal taking, Appellants filed a Petition for the Appointment of Viewers pursuant to Section 502(e) of the Code alleging that there was a de facto taking by the City which caused them to suffer a compensa-

---

**3.** Section 1–201(8)(i)(C) was added when the Legislature expanded the definition of "Displaced person" by the Act of April 4, 1989, P.L. 5. The Legislature also expanded the definition of "Acquiring Agency" at this time.

**4.** Sections 601–A and 603A of the Code were added by the Act of December 29, 1971, P.L. 640, *as amended*, 26 P.S. § 1–601A and 1–603A.

ble injury entitling them to benefits as "displaced persons."

In *Redevelopment Authority of Union County v. Property Located in West Milton*, 101 Pa.Cmwlth. 634, 517 A.2d 210 (1986), Penn Central Advertising Inc. (Penn Central) maintained two billboard advertising signs on a parcel of ground pursuant to a lease. The initial lease term was for three years with the option to extend the lease terms from year to year under the same conditions. However, after the first three years, Penn Central did not formally exercise its option to renew for another year, but each successive year it paid the yearly rent, which was accepted by the owners. After one of these yearly payments, however, the owners returned the payment and explained that the parcel of ground was in the area of a flood control project of the redevelopment authority and the authority was in the process of acquiring the property. The owners explained that the rental payment could be prorated, however. A few months later, the owners informed Penn Central of the taking settlement with the redevelopment authority and told them that they must remove the signs. Penn Central removed the signs and sent the owners a prorated payment of the rent. Thereafter, Penn Central filed a petition with the trial court alleging a de facto taking and seeking moving expenses as a displaced person. With regard to whether a de facto taking had occurred, this Court stated that:

> ... the issue is what property interest, if any, did Penn Central have at the time of the taking. The right to renew the lease on a year-to-year basis would give Penn Central a property interest. However, the trial court held, and we agree, that Penn Central waived this right of renewal and agreed to an early termination of the lease when it forwarded to the Vincents its check for $43.75, prorating the rent up to June 1, 1981. *There*

*never had been any formal renewal on a year-to-year basis. Penn Central became a tenant at will. A tenant whose lease has expired is not a condemnee under the Code. Petition of Fisher,* 433 Pa. 113, 248 A.2d 849 (1969); *Cherry Press, Inc. v. Redevelopment Authority of Philadelphia,* 11 Pa.Cmwlth. 47, 312 A.2d 477 (1973). He no longer has any property interest in the premises.

*Id.* at 211–212 (emphasis added). However, with regard to whether Penn Central was a displaced person, this Court recognized that:

> Section 201(5) of the Code, 26 P.S. § 1–201(5), defines an acquiring agency as an entity vested with the power of eminent domain. A 1971 comment to section 201(5) of the Code, clarifies the issue, by stating that the special damages provided in section 601–A of the Code, 26 P.S. § 1–601A, dealing with relocation and moving expenses, are payable whether the property is condemned *or acquired amicably* in lieu of condemnation.
>
> . . .
>
> *A displaced person need not be a condemnee.* Being legally in possession at the time of acquisition and having moved or moved his property, *the issue is whether there had been an acquisition within the meaning and intent of the Act.* The acquisition by deed in lieu of condemnation, and the displacement, were, in effect, one act. The form of the transaction should be pierced to see what is the substance, and to see whether it is at odds with the intent and purpose of the Code. The record is clear that the property was purchased for flood control purposes as indeed had been other property in the area. Everyone was aware of that program.

*Id.* at 212–213 (italics in original; underline added). Therefore, we affirmed the order of the trial court granting Penn Central damages as a displaced person.

 Similarly, in this case, because Appellants were renting on a month-to-month basis, their leases had expired by the time the City purchased the Park and they are therefore not condemnees under the Code. However, this has no bearing on whether they are "displaced persons" under the Code. As recognized in *Redevelopment Authority of Union County,* the definition of "displaced persons" is broader than the definition of "condemnee". In addition, *Redevelopment Authority of Union County* was decided in 1986 and, as noted in footnote 3 above, the definition of "displaced person" was expanded in 1989 to include "[a] person who was in occupancy of the real property *on or before the date of acquisition notwithstanding the termination or expiration of a lease* entered into before or after the event giving rise to the displacement." Section 201(8)(i)(C) (emphasis added). Appellants argue that they are "displaced persons" under this expanded definition and also Section 201(8)(i)(A)(I) and are therefore entitled to relocation expenses pursuant to 1–601A of the Code. As recognized in *Redevelopment Authority of Union County,* however, there must first be an acquisition for a displaced person to be entitled to relocation expenses. Thus, whether there was an acquisition under the Code is the first question that must be answered.

In *Koschak,* a case decided after the 1989 amendments to the Code, Dr. Jiunta was the owner of a property where he maintained his professional practice. He also shared office space with Dr. Koschak pursuant to an office sharing agreement, which provided that Dr. Jiunta could terminate the agreement if he decided to sell the property. After Dr. Jiunta notified Dr. Koschak that he had decided to sell the property to the redevelopment authority, Dr. Koschak filed a petition for appointment of a board of view. The authority filed preliminary objections, which the trial court denied. On appeal, the authority argued that the record showed that the acquisition was through a voluntary, fair market value negotiated purchase and that there was no evidence to indicate that the authority purchased the property in lieu of commencing condemnation proceedings. Dr. Koschak argued that, pursuant to Section 201(8)(i)(C), he was entitled to damages as a dislocated person. This Court stated that:

> The Court agrees with the Authority that Dr. Koschak is not a displaced person under Section 201(8). First, as the Authority notes, the Court has already determined that Dr. Koschak no longer had any legal right to occupy the premises after May 4, 1999. Section 201(8)(ii)(A) provides that a displaced person does not include "a person who unlawfully occupies the displacement dwelling...." Further, *this record includes no showing of the essential element under Section 201(8)(i)(A)(I) that the acquisition was "for a program or project undertaken by an acquiring agency...."*The Sellers Acknowledgement of Voluntary Arm's Length Purchase Offer and Waiver of Relocation Payments and Assistance, attached in Exhibit B to the Authority's preliminary objections, states that if the Jiuntas did not wish to sell their property the Authority would not have acquired the property, that it would not have used its power of eminent domain and that the Jiuntas were ineligible for relocation payments under any federal statute or other law or regulation. Because *the Authority's purchase of the subject property was through private negotiations and sale rather than through its*

*power under the Code,* the Court is compelled to reverse the trial court's order.

*Koschak,* 758 A.2d at 294 (Pa.Cmwlth. 2000) (emphasis added).

■ Appellants attempt to distinguish this case from *Koschak* by noting that in that case this Court was dealing with Section 1–201(8)(i)(A)(I), whereas in this case they assert that they are displaced persons under 1–201(8)(i)(A)(II), which provides that a displaced person is one who moves "as a direct result of rehabilitation, demolition or such other displacing activity under a program or project undertaken by an acquiring agency in any case in which the displacement is permanent." However, it is clear that, in both subsections (I) and (II), there is a requirement that there be a "program or project undertaken by an acquiring agency", i.e. an acquisition. As we noted in *Koschak,* if the acquiring agency acquired the property through private negotiations rather than through its power under the Code, displacement benefits are not available to the persons forced to move because of that sale. Here, unlike *Redevelopment Authority of Union County,* there is no evidence that the City would have exercised its power of eminent domain if Raimondi had chosen not to sell the Park to the City. Rather, the sale of the Park was an arms-length transaction more akin to the situation in *Koschak.* As such, because there was no acquisition within the meaning of the Eminent Domain Code, Appellants cannot be "displaced persons" under the Eminent Domain Code and are therefore not entitled to reimbursement for their relocation expenses. Therefore, the trial court did not err by dismissing the Petition for Appointment of Board of Viewers filed by Appellants.

Accordingly, the order of the trial court is affirmed.

**ORDER**

AND NOW, December 9, 2003, the order of the Court of Common Pleas of Allegheny County docketed at G.D. 02–10335 and dated January 29, 2003 is hereby AFFIRMED.