# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael McAnally, : 
                Appellant : 
                            : 
          v. : No. 1385 C.D. 2015
                            : Argued: May 12, 2016
Commonwealth of Pennsylvania, : 
Department of Transportation : 

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                  **HONORABLE DAN PELLEGRINI,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**            **FILED: June 6, 2016**

Michael McAnally appeals from the Order of the Court of Common Pleas of Philadelphia County (common pleas) sustaining the preliminary objections (POs) filed by the Commonwealth of Pennsylvania, Department of Transportation (Department), vacating its prior order granting McAnally's Petition for Appointment of Viewers (Petition), and denying the Petition. On appeal, McAnally argues that common pleas erred in concluding that he was not a "displaced person" pursuant to the Eminent Domain Code[1] (Code) and, therefore, was not entitled to damages as a result of the Department's condemnation of the

---

[1] 26 Pa. C.S. §§ 101-1106.

property on which McAnally stored heavy equipment. Discerning no error, we affirm.

On October 7, 2013, the Department filed a Declaration of Taking (Declaration) for property located at 4000-4001 Ashland Street in Philadelphia. (Property). (Op. at 1.) Numerous objections and motions related to appointing "a Board of Viewers [were] filed by William Miller, Lourdes Sanchez, and Collins Cars, LLC"[2] with common pleas. (Id.) Common pleas held a hearing after which it "appointed a Board of Viewers pursuant to th[is] petition" on September 30, 2014. (Id.)

Subsequently, on January 12, 2015, McAnally filed his Petition averring that he "had arranged with . . . Miller to store heavy equipment on . . . 4001 Ashland Street" but that Miller did not "disclose to [McAnally] that Miller did not own the Property, but was instead a tenant who had defaulted on the lease."[3] (Id.; Petition ¶¶ 17, 21.) McAnally moved his heavy equipment from the Property in February 2014 pursuant to a settlement agreement in a replevin action (Replevin Action) he filed against the Property's Owner (Owner). (Op. at 1.) Therefore, McAnally asserted that, under Section 902(a)(2)[4] of the Code, he was a displaced person

---

[2] These individuals and Collins Cars, LLC, of which Miller was the managing member, held various interests in the Property.

[3] Miller stopped paying rent for the Property and the Property's Owner (Owner) instituted a Landlord and Tenant Complaint against Miller on October 12, 2012. (R.R. at 15a.) Owner died in April 2013, and his estate (Estate) obtained a judgment in Owner's favor on June 20, 2013, for $138,214.20 and possession of the Property. (R.R. at 24a.) The Estate evicted Miller from the Property on October 1, 2013, pursuant to an alias writ of possession. McAnally was aware of the eviction because he was the one upon whom the alias writ of possession was served at the Property on that date. The Estate would not allow McAnally to remove his equipment from the Property, and he filed a replevin action (Replevin Action) in order to retrieve that equipment. (Replevin Action ¶¶ 21-24.)

[4] 26 Pa. C.S. § 902. Section 902 of the Code states, in relevant part:

*(Continued…)*

2

(a) Reasonable expenses incurred.--

(1) A displaced person shall be reimbursed for reasonable expenses incurred in moving the displaced person and the person's family and for the removal, transportation and reinstallation of personal property.

(i) Receipts shall be prima facie evidence of incurred reasonable moving expenses.

(ii) Any displaced person who is displaced from a dwelling may elect to receive, in lieu of reimbursement of incurred moving expenses, a moving expense and dislocation allowance determined according to a schedule established by the acquiring agency.

(2) As used in this subsection, the following words and phrases shall have the meanings given to them in this paragraph:

"Displaced person." Includes a person who moves from real property or moves personal property:

(i) as a direct result of a written notice of intent to acquire or the acquisition of other real property, in whole or in part, on which the person conducts a business or farm operation for a program or project undertaken by an acquiring agency; or

(ii) as a direct result of rehabilitation, demolition or other displacing activity of other real property on which such person conducts a business or a farm operation under a program or project undertaken by an acquiring agency if the displacement is permanent.

(b) Damages for dislocation of business or farm operation.--A displaced person who is displaced from a place of business or from a farm operation shall be entitled, in addition to any payment received under subsection (a), to damages for dislocation of business or farm operation as follows:

(1) Damages equal to the value in place of the personal property which:

(i) is not moved because of the discontinuance of the business or farm operation or the unavailability of a comparable site for relocation;

. . . .

(2) (i) In lieu of the damages provided in paragraph (1), at the option of the displaced person, an amount not to exceed $12,000 to be determined by taking 50% of the difference, if any, between the original cost of the personal property to the displaced person or the replacement cost of equivalent property at the time of sale, whichever is lower, and the net proceeds obtained by the displaced person at a commercially reasonable private or public sale.

(ii) If this option is selected, the displaced person shall give the acquiring agency not less than 60 days' notice in writing of intention to seek damages under this option.

*(Continued…)*

3

because "he had conducted a business on the Property" and "moved from the Property with personal property 'as a direct result of [. . .] the acquisition of other real property . . . undertaken by an acquiring [agency].'" (Op. at 1 (quoting 26 Pa. C.S. § 902(a)(2)(i)).) McAnally maintained that, as a displaced person, he was entitled to just compensation and reasonable moving expenses under Sections 502[5] and 902 of the Code. Common pleas granted the Petition and appointed a three-member Board of Viewers on March 13, 2015.

The Department filed POs to the Petition on April 13, 2015,[6] objecting that McAnally: was not a displaced person and lacked standing; did not state a cause of action under Section 902(b) of the Code; and was estopped from filing the Petition. Specifically, the Department averred that McAnally was not a displaced person because he did not lawfully occupy the Property where Miller's lease with the

. . . .
      (3) Actual reasonable expenses in searching for a replacement business . . .
.
      (4) Actual reasonable expenses necessary to reestablish a displaced . . . small business at its new site, but not to exceed $25,000. . . .
      (5) (i) In addition to damages under subsection (a) and paragraphs (1), (2), (3) or (4), damages in an amount equal to the average annual net earnings but not more than $60,000 nor less than $3,000.

26 Pa. C.S. § 902.
    [5] 26 Pa. C.S. § 502. Section 502 provides, in relevant part, that "[a] condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers," which includes: the name of the displaced person as plaintiff and the name of the condemnor as defendant; the date the Declaration was filed and if preliminary objections were filed and whether they remain outstanding; the names of all those known to the petitioner who have an interest in the property at issue and the nature of that interest; a property description; and "a request for the appointment of viewers to ascertain just compensation." Id.
    [6] Pursuant to Section 504(d)(1) of the Code, "[a]ny objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers." 26 Pa. C.S. § 504(d)(1).

Owner expressly prohibited subletting and Miller did not receive written consent from Owner to sublet the Property to McAnally.  (POs ¶¶ 6-7, 55-59, 66-76.) Additionally, the Department asserted that McAnally was not a displaced person because he did not move from the Property due to the condemnation but because he was evicted from the Property by Owner's Estate (Estate) on October 1, 2013. (POs ¶¶ 60-64.)  Relatedly, the Department averred that the issue of the removal of McAnally's heavy equipment was settled in the Replevin Action in which McAnally asserted that he had to remove his heavy equipment due to Miller's eviction and signed a stipulation acknowledging that the settlement was a final disposition of all claims.  (POs ¶¶ 25-54.)  McAnally filed an answer in opposition to the POs (Answer) that denied the POs' averments on May 4, 2015.

Common pleas issued a Rule to Show Cause on May 18, 2015, as to why the relief requested by the Department should not be granted, returnable May 28, 2015.[7]  On June 25, 2015, common pleas held oral argument on the POs and McAnally's Petition.  The Department argued that McAnally did not have legal possession of the Property and did not vacate the Property due to the condemnation.  The Department pointed to paragraph 6 of the lease agreement between Owner and Miller, which precluded subletting without Owner's written consent, indicated that any such subletting was void, and stated that the Owner had

---

[7] The Estate filed a memorandum in support of the Department's POs on May 29, 2015, arguing that McAnally's Answer should be stricken and that sanctions were warranted against McAnally for "misrepresent[ing] a number of facts and the law in an effort to mischaracterize [McAnally's] position."  (Op. at 2 (internal quotations omitted).)  McAnally replied to the Estate's submission arguing that it was improper and the Estate had no standing in the proceeding on the Petition.

the option to terminate the lease if violated.[8]  (R.R. at 10a.)  The Department asserted that Owner never gave his written consent to Miller to sublet the Property to McAnally and, therefore, although there was a sublease between Miller and McAnally, that sublease was void.  According to the Department, because the sublease was void, McAnally had no legal right to be on the Property and could not be a displaced person under the Code.  The Department further argued that McAnally was not a displaced person because he did not move his personal property as a result of the condemnation but as a result of being evicted prior to the Department's taking of the Property.

McAnally argued that he had a sublease with Miller, ceased operations when told by the Department to not engage in any further business transactions on the Property, and was a person in occupancy of the Property on or before the Department acquired the Property.  Under these circumstances, McAnally asserted that he qualified as a displaced person notwithstanding whether the sublease and lease were terminated.  The Estate participated in the hearing and asserted that Owner evicted Miller/McAnally from the Property, and McAnally filed the Replevin Action against Owner in October 2013 related to the removal of McAnally's equipment from the Property.  The Replevin Action was settled on November 1, 2013, and allowed McAnally to remove his equipment beginning in February 2014.

Following argument, common pleas sustained the Department's POs and vacated its prior order granting the Petition.  McAnally requested reconsideration

---

[8] Paragraph 6 states that "Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor, which shall not be unreasonably withheld.  Any such assignment or subletting without consent shall be void and, at the option of the Lessor, [Lessor] may terminate this lease."  (R.R. at 10a.)

6

from common pleas, which common pleas denied. McAnally timely appealed common pleas' order sustaining the POs, vacating its prior order, and denying the Petition. McAnally filed a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure[9] (Statement), arguing that common pleas had erred in finding that McAnally was not a displaced person. Common pleas issued an opinion in support of its order pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure[10] responding to the issues McAnally raised in his Statement. Common pleas concluded that McAnally was not a "displaced person" under Sections 103 and 902(a)(2) of the Code for two reasons.

First, common pleas held that the Code requires that the displacement to occur "'as a [direct] result of a written notice of intent to acquire'" and the record here established that McAnally's displacement was not the result of the Department's intent to acquire the Property. (Op. at 5 (quoting 26 Pa. C.S. § 103

---

[9] Pa. R.A.P. 1925(b). Rule 1925(b) requires, in relevant part, that

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R.A.P. 1925(b).

[10] Pa. R.A.P. 1925(a). Rule 1925(a)(1) provides that

> Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of . . . .

Pa. R.A.P. 1925(a)(1).

(emphasis omitted)).) Common pleas held that McAnally "vacated the [P]roperty due to [the] settlement reached during the action in replevin, not as a direct result of the taking." (Op. at 6.) Common pleas explained that McAnally had been evicted from the Property as of October 1, 2013, which occurred prior to the Department's filing of the Declaration on October 7, 2013.

Second, common pleas observed that the definition of displaced person expressly excludes "[a] person that unlawfully occupies the displacement property . . . .," 26 Pa. C.S. § 103, and that "'[a] party who has no legal right to use a property cannot logically be considered a displaced person when the property is taken pursuant to eminent domain powers.'" (Op. at 5 (quoting Koschak v. Redevelopment Auth. of City of Wilkes-Barre, 758 A.2d 291, 294 (Pa. Cmwlth. 2000) (internal quotation omitted)).) Common pleas concluded that "the record clearly established . . . that [McAnally] did not lawfully occupy the displacement property" because "the lease between [Owner] and . . . Miller not only prohibited the sublease of the Property without written consent, but rendered any sublease entered into by [Miller] void and a legal nullity." (Op. at 5-6.) For these reasons, common pleas held that McAnally was not a displaced person under the Code and was not entitled to any compensation as a result of the Department's taking of the Property.

On appeal,[11] McAnally asserts the same arguments as he did before common pleas. In addition, McAnally argues that the lease between Owner and Miller was modified when Owner and Miller entered into an agreement of sale for the

---

[11] Our review in eminent domain matters "is limited to determining whether the trial court abused its discretion, committed an error of law or whether the findings of fact . . . are supported by sufficient evidence." R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery, 885 A.2d 643, 648 n.4 (Pa. Cmwlth. 2005).

8

Property and that Owner was aware of McAnally's presence and allowed him to remain on the Property thereby making him a valid subtenant. The Department responds that common pleas correctly rejected McAnally's arguments that he was a displaced person under the Code because McAnally did not lawfully occupy the Property and was not displaced as a direct result of the condemnation. The Department also argues that there is no evidence that suggests that Owner was aware of McAnally's presence on the Property prior to the issuance of the alias writ of possession on October 1, 2013. Finally, the Department asserts that McAnally's alternative argument related to the agreement of sale is waived because McAnally did not raise it before common pleas or in his Statement.[12]

Initially, we address the Department's assertion that McAnally waived the issue that the terms of the lease were modified by the agreement of sale entered into by Miller and Owner. It is well-settled that the failure to raise an issue in a Statement constitutes a waiver of that issue under Rule 1925(b)(4)(vii) of the Pennsylvania Rules of Appellate Procedure.[13] Pa. R.A.P. 1925(b)(4)(vii); Busch v. Dep't of Transp., Bureau of Driver Licensing, 900 A.2d 992, 996 (Pa. Cmwlth. 2006). Similarly well-settled is that issues must be asserted at each stage and may not be raised for the first time on appeal. Rule 302(a) of the Pennsylvania Rules of

---

[12] The Department further notes that, to the extent that McAnally relies on the agreement of sale: the agreement did not expressly modify the terms of the lease; McAnally acknowledges that Miller assigned that agreement to a third party in October 2012; and McAnally acknowledges the agreement lapsed on May 5, 2013, several months before the Department issued the Declaration.

[13] Rule 1925(b)(4)(vii) of the Pennsylvania Rules of Appellate Procedure states "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa. R.A.P. 1925(b)(4)(vii).

9

Appellate Procedure,[14] Pa. R.A.P. 302(a); Schmidt v. Boardman Co., 11 A.3d 924, 941-42 (Pa. 2011); Pennsylvania Bankers Ass'n v. Pennsylvania Dep't of Banking, 962 A.2d 609, 621 (Pa. 2008). Requiring that issues be raised prior to the appeal "ensure[s] that the trial court or agency that initially rules on such matters has had an opportunity to consider the issue." Lincoln Philadelphia Realty Assoc. I v. Bd. of Revision of Taxes, 758 A.2d 1178, 1186 (Pa. 2000). A review of McAnally's Statement confirms that this issue was not raised therein. Moreover, although McAnally indicated in the Petition that Miller claimed to be the owner of the Property, (Petition ¶¶ 15, 16), and in his Answer to the Department's POs that he believed that Miller was the owner of the Property,[15] (Answer ¶ 4), McAnally did not argue at the hearing that the lease was modified by the agreement of sale and a review of the transcript reveals that there was no mention of the agreement of sale during the hearing. Further, the motion for reconsideration also contained no mention of the agreement of sale or that such agreement altered the terms of the lease between Owner and Miller. Thus, common pleas never "had an opportunity to consider the issue," Lincoln Philadelphia Realty Assoc. I, 758 A.2d at 1186, and this issue is waived and will not be addressed on appeal.

Similarly absent from the Petition, hearing transcript, and Statement is any explicit assertion that McAnally became a valid subtenant as a result of Owner's knowledge and acceptance of McAnally's presence on the Property. Although the

---

[14] Rule 302(a) of the Pennsylvania Rules of Appellate procedure states "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a).

[15] We note, however, that McAnally pled in his Replevin Action that Miller: was a tenant on the Property; was responsible for paying Owner rent; did not pay that rent; was evicted for not paying rent; and did not inform McAnally of the eviction or the writ of possession. (Replevin Action ¶¶ 5, 8, 13-17.)

Settlement Agreement in the Replevin Action acknowledged that McAnally was present on the Property as Miller's subtenant and had equipment remaining on the Property following McAnally's and Miller's eviction on October 1, 2013, these acknowledgments do not validate the void sublease but explain why McAnally had equipment on the Property and could recover that equipment following his eviction. Moreover, contrary to McAnally's assertion, this matter is not analogous to the situation in Pagano v. Redevelopment Auth. of City of Philadelphia, 376 A.2d 999, 1002, 1005 (Pa. Super. 1977), because, in that case, there were no allegations that the subtenants unlawfully possessed the property. In Pagano, the subtenants successfully established that, after the primary tenant left the property, they became the tenants of the redevelopment authority because it knew of the subtenants' presence and accepted that presence where the subtenants contacted it six times in one year due to complaints about vandalism, reported a theft from the property by a redevelopment authority employee to his supervisor, and spoke to officials to request extensions of time for when they had to move. Id. at 1005. Here, there is no evidence that Owner knew of and acquiesced to McAnally's presence on the Property[16] that would validate McAnally's occupancy of the Property.

McAnally's remaining arguments that he was a displaced person under the Code were thoroughly and correctly analyzed, and the matter was ably disposed of

---

[16] The motion for reconsideration suggests that Owner was present on the Property on two occasions when McAnally was also present, and, as such, Owner waived paragraph 6 of the lease agreement. However, these facts were not asserted prior to the motion for reconsideration, and this argument was not raised before common pleas in the Petition, at the Hearing, or in the Statement.

in the well-reasoned opinion of Judge Nina Wright Padilla.[17]  Therefore, we affirm on the basis of her opinion in <u>McAnally v. Commonwealth of Pennsylvania, Dep't of Transp.</u> (Philadelphia County, Civil Division, October Term, 2013 No. 0071, filed October 9, 2015).

_____
**RENÉE COHN JUBELIRER,** Judge

---

[17] McAnally argues that the cases cited by the Department, <u>Martin Media v. Commonwealth, Dep't of Transp.</u>, 743 A.2d 448 (Pa. 2000), and <u>Koschak</u>, did not involve the provision he relies upon that a displaced person can be "[a] person who was in occupancy of the real property on or before the date of acquisition notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement." (McAnally's Br. at 16-17, 19-20.)  However, the petitioner in <u>Koschak</u> did specifically rely upon this provision to assert that he qualified as a displaced person and this Court was unpersuaded by that argument. <u>Koschak</u>, 758 A.2d at 294.  The Supreme Court, in <u>Martin Media</u>, expressly held that the petitioner, whose billboard encroached on the property being taken and had to be moved from the property due to the taking, was not a displaced person because it did not have a "legal right to use [the] property."  In both <u>Martin Media</u> and <u>Koschak</u>, the Courts rejected the petitioners' claim of being a displaced person based on the fact that, as here, the petitioners were not lawful occupiers of the property at the time of the taking.  <u>Martin Media</u>, 743 A.2d at 451; <u>Koschak</u>, 758 A.2d at 294.  Moreover, McAnally's reliance on <u>Carr v. City of Pittsburgh</u>, 837 A.2d 655 (Pa. Cmwlth. 2003) is misplaced because that matter did not involve the question of whether the purported displaced persons were on the property unlawfully and, therefore, could not be a "displaced person."  This Court, in <u>Carr</u>, ultimately affirmed the order dismissing the Petition for Appointment of Viewers because there was no acquisition by eminent domain where the owner and the City of Pittsburgh negotiated the sale of the property in an arms-length transaction.  We observe that all of these cases were decided under the Former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, <u>as amended</u>, <u>formerly</u> 26 P.S. §§ 1-101-1-903, which contained substantially similar provisions regarding displaced persons as the current Code.

McAnally further asserted at oral argument that the operative date for determining whether he was a displaced person was March 23, 2013, when he received notice from the Department that he would be eligible for compensation, not October 7, 2013, when the Declaration was filed.  We disagree.  However, even if March 23, 2013 was the relevant date, common pleas found that McAnally never lawfully occupied the Property because his sublease with Miller was void having been entered into without Owner's written permission.  (Op. at 6.)

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael McAnally,            :
          Appellant   :
                     :
         v.         :   No. 1385 C.D. 2015
                     :
Commonwealth of Pennsylvania, :
Department of Transportation   :

# O R D E R

NOW, June 6, 2016, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is **AFFIRMED** on the basis of the well-reasoned opinion issued by the Honorable Nina Wright Padilla in <u>McAnally v. Commonwealth of Pennsylvania, Dep't of Transp.</u> (Philadelphia County, Civil Division, October Term, 2013 No. 0071, filed October 9, 2015).

 

                              _____

                              **RENÉE COHN JUBELIRER,** Judge

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

MICHAEL MCANALLY

      v.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF TRANSPORTATION

COMMONWEALTH COURT No.
1385 CD 2015

Civil Division
October Term, 2013 No. 0071

## OPINION

Appellant, Michael McAnally, appeals this court's order sustaining the Commonwealth of Pennsylvania's Preliminary Objections and denying his Petition for Appointment of a Board of Viewers.

### FACTUAL AND PROCEDURAL HISTORY

This action commenced on October 7, 2013, with the filing by Appellee the Commonwealth of Pennsylvania of a Declaration of Taking for the Property located at 4000-4001 Ashland Street in the City of Philadelphia, Pennsylvania. Prior to Appellant's entry into the case, this court heard and ruled upon objections and other motions related to a Petition to Appoint a Board of View filed by William Miller, Lourdes Sanchez, and Collins Cars, LLC in response to the Declaration of Taking. On September 30, 2014, following a hearing, this court appointed a Board of Viewers pursuant to the petition filed by William Miller, Lourdes Sanchez, and Collins Cars, LLC.

On January 12, 2015, Appellant Michael McAnally filed a Petition to Appoint a Board of View. Said Petition averred that he was a displaced person pursuant to 26 Pa.C.S. § 902(a)(2); that he had conducted a business on the Property; that he moved from the Property with personal property "as a direct result of the acquisition of other real property ... undertaken by an acquiring agent." The Petition further averred that Appellant had arranged with William Miller to store heavy equipment on Miller's lot at 4001 Ashland Street, and that Miller had failed to disclose to Appellant that Miller did not own the Property, but was instead a tenant who had defaulted on the lease. Appellant then moved his personal property from 4001 Ashland Street between February 1, 2014 and February 25, 2014. Appellant averred that he was entitled to just compensation as a result.

On March 13, 2015, this court granted Appellant's Petition and appointed James O'Connell, Eileen Lynn, and Ronald Panepinto as the Board.

On April 13, 2015, the Commonwealth of Pennsylvania filed Preliminary Objections to the Petition for Appointment of the Board of View. The Objections averred that no written lease agreement was executed between Miller and Appellant, that the lease Miller had signed specifically prohibited subletting, and that no written consent was obtained from McMenamin, the owner of the Property. *See* Preliminary Objections, ¶¶ 6-7. The Objections averred that Appellant had represented himself to be a tenant on the Property, and that he had been listed as having an interest only in an abundance of caution. *See* Preliminary Objections, ¶¶ 15-16. The Objections also noted that the issue regarding the removal of Appellant's heavy equipment had been previously settled via a replevin action in which a stipulation was signed indicating the settlement was a final disposition of all claims, docketed in this court at October Term, 2013, No. 0735. Thus, Appellee argued that Appellant was estopped from the present action; that Appellant was not a displaced person and therefore had no standing; and that Appellant had failed to state a cause of action under § 902(b) of the Eminent Domain Code. *See* Preliminary Objections, ¶¶ 25-83.

On May 4, 2015, Appellant filed an Answer in Opposition to Appellee the Commonwealth of Pennsylvania's Preliminary Objections, denying Appellee's averments.

On May 5, 2015, Appellant filed a Praecipe to Supplement his Answer.

On May 18, 2015, this court issued a Rule to Show Cause why the relief requested should not be granted, returnable the 28th day of May, 2015. This hearing was later relisted for June 25, 2015.

On May 29, 2015, the Estate of Charles McMenamin filed a Memorandum in Support of the Commonwealth of Pennsylvania's Preliminary Objections and argued that the Answer should be stricken, and requesting sanctions as Appellant's counsel allegedly "misrepresented a number of facts and the law in an effort to mischaracterize his client's position." *See* Preliminary Objections and Request for Sanctions, ¶ 3.

2

On June 24, 2015, Appellant filed an additional Reply in Opposition to the Preliminary Objections, arguing that the Estate of Charles McMenamin's Preliminary Objections were improper as the Estate did not have standing in this proceeding.

On June 25, 2015, this court heard argument on the merits of the Petition to Appoint a Board of View.

Appellee argued that Appellant was not in legal possession of the Property, and that he did not move from the Property as a result of the condemnation. N. T. 6/25/15 at 6-7. Specifically, Appellee argued that Paragraph 6 of the lease between Charles McMenamin and William Miller specifically prohibited subleasing without the written consent of the lessor and that any assignment or subletting without consent shall be void, and at the option of the lessor may terminate this lease. N. T. 6/25/15 at 9-11, 13. Appellee argued that there was never written consent given, and that although Miller had signed an agreement to sublease with Appellant, the sublease was invalid and void. N. T. 6/26/15 at 13-14, 17. Appellee argued that a displaced person does not include a person unlawfully occupying the displacement property, or if that person had no legal rights to be on the property. The Code further states that to qualify as a displaced person, one must be in legal occupancy of the property at the time it is acquired, based on the lease. N. T. 6/26/15 at 19-20. Appellee further argued that Appellant was not a displaced person as he had not moved his property as a direct result of the condemnation and that he had been evicted prior to the taking. N. T. 6/26/15 at 24-25.

Appellant argued that the language of the lease agreement between McMenamin and Miller meant that this court should consider whether the landlord terminated Appellant's sublease. N. T. 6/26/15 at 14-15. Appellant further argued that a person in occupancy of the real property on or before the date of acquisition notwithstanding the termination or expiration of a lease gives rise to displacement. N. T. 6/26/15 at 18.

The Estate of Charles McMenamin noted that there was a replevin action filed by Appellant that resulted in a writ of possession served October 1, 2013; settled November 1, 2013; and that in late February, 2014 Appellant was allowed to remove his equipment. N. T. 6/26/15 at 23-24.

3

At the conclusion of the hearing, this court sustained the Preliminary Objections and vacated the Order docketed on March 13, 2015.

On July 8, 2015, Appellant filed a Motion for Reconsideration.

On July 13, 2015, this court denied Appellant's Motion for Reconsideration.

On July 27, 2015, Appellant filed a timely Notice of Appeal to the Commonwealth Court of Pennsylvania. That same day, Appellant filed his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(B), arguing that this court erred in: "refusing to find that a displaced person includes a person that was in occupancy of the real property on or before the date of acquisition, notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement;" "refusing to find that a displaced person includes a person who moves personal property as a direct result of a written notice of intent to acquire or the acquisition of other real property, in whole or in part, on which the person conducts a business;" and in sustaining Appellee the Commonwealth of Pennsylvania's Preliminary Objections.

## DISCUSSION

Appellant raises a number of issues related to this court's order sustaining Appellee's Preliminary Objections to his Petition to Appoint a Board of View. However, these issues are meritless as he was not a displaced person pursuant to the definition of the statute. On appeal, the appellate court's scope of review in an eminent domain matter is limited to determining whether the trial court abused its discretion, committed an error of law or whether the findings of the trial court are supported by sufficient evidence. *R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 885 A.2d 643, 648 (Pa. Commw. Ct. 2005).

As noted above, this case arose from a Declaration of Taking filed against the Property located at 4000-4001 Ashland Street in the City and County of Philadelphia, Pennsylvania. Following the filing of a Declaration of Taking, notice is sent to the condemnee. *See* 26 Pa. C.S. § 302; 305. Following the condemnation, a conemnor, condemnee, or displaced person may file a Petition for Appointment of viewers to ascertain just compensation. *See* 26 Pa. C.S. § 502. Displaced persons, specifically, have

4

special damages that they may seek as a result of condemnation, including moving and related expenses. *See* 26 Pa. C.S. § 902. However, any objection to the appointment of viewers may be raised within thirty (30) days of the notice of the appointment of viewers by Preliminary Objection, after which the court shall promptly determine all Preliminary Objections and make the appropriate orders. *See* 26 Pa. C.S. § 504(d). In the instant case, Appellant filed a Petition for Appointment of Viewers, averring that he was a displaced person pursuant to the statute; Appellee filed Preliminary Objections to his Petition, averring that he was not a displaced person pursuant to the statute.

Pursuant to Pennsylvania Statute, a "displaced person" is defined as:

(1) Except as set forth in paragraph (2) or (3), any of the following:
    (i) A condemnee or other person that moves from real property or moves personal property from real property:
        (A) **as a direct result of a written notice of intent to acquire** or the acquisition of the real property, in whole or in part, for a program or project undertaken by an acquiring agency; or
        (B) on which such person is a residential tenant or conducts a small business or a farm operation as a direct result of rehabilitation, demolition or other displacing activity for a program or project undertaken by an acquiring agency if the displacement is permanent.
        (ii) A person that was in occupancy of the real property on or before the date of acquisition, notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement.
(2) The term does not include any of the following:
    (i) **A person that unlawfully occupies the displacement property** or occupied the property for the purpose of obtaining assistance under this title.
    (ii) In any case in which the acquiring agency acquires real property for a program or project, a person, other than a person that was an occupant of the property at the time it was acquired, that occupies the property on a rental basis for a short term or a period subject to termination when the property is needed for the program or project.
(3) This definition is subject to section 902(a)(2) (relating to moving and related expenses of displaced persons).

26 Pa. C.S. § 103 (emphasis added). Further, case law notes that although the definition of a displaced person is broader than that of a condemnee, "[a] party who has no legal right to use a property cannot logically be considered a displaced person when the property is taken pursuant to eminent domain powers." *See Carr v. City of Pittsburgh*, 837 A.2d 655, 660 (Pa. Commw. Ct. 2003); *Koschak v. Redevelopment Auth. of City of Wilkes-Barre*, 758 A.2d 291, 294 (Pa. Commw. Ct. 2000).

In the instant case, the record clearly established two things: first, that Appellant did not vacate the premises as a result of a written notice of intent to acquire, and secondly, that Appellant did not

33

lawfully occupy the displacement property. Pleadings and uncontroverted assertions established that Appellant vacated the property due to a settlement reached during an action in replevin, not as a direct result of the taking; and that the lease between Charles McMenamin and William Miller not only prohibited the sublease of the Property without written consent, but rendered any sublease entered into by the lessee void and a legal nullity. Further, Appellant had been evicted from the Property as a result of the replevin action which was completed on October 1, 2013, prior to the filing of the declaration of taking on October 7, 2013.

Consequently, Appellant was not a displaced person per the definition of the statute and Appellant is not entitled to just compensation as a result.

## CONCLUSION

For all of the reasons stated above, this court's decision should be affirmed.

BY THE COURT:

DATE: October 9 2015

_____
NINA WRIGHT PADILLA, J.